Chester ANDERSON, et al., Appellants,

v.

JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Appellees.

No. 09 86 127 CV.

Court of Appeals of Texas, Beaumont.

Oct. 8, 1987.

Rehearing Denied Oct. 28, 1987.

Steve Carlton, Steve Carlton & Associates, Orange, for appellants.

John H. Seale, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellees.

## OPINION

DIES, Chief Justice.

Chester Anderson, Plaintiff below, sued First Texas Equities, Inc., Livingston Savings and Loan Association, and Jasper Federal Savings and Loan Association, Defendants below, for damages. After a jury trial, judgment was entered that Plaintiff take nothing of and from Defendants, from which judgment Plaintiff has perfected appeal to this court. The parties herein will be referred to as they were below or by name.

Plaintiff, a carpenter/contractor, secured a contract to purchase some four plus acres of land in the City of Livingston. Desiring to build a motel on the land, he approached the Livingston Savings and Loan Association for financing. It seems the latter wanted more security than that which Plaintiff's signature on a note would provide, so a limited partnership with First Texas Equities, Inc., was formed with Plaintiff as the general partner and First

Texas Equities as the limited partner. The partnership formed was named Sundown, Ltd. On or about August 30, 1982, Livingston Savings and Loan entered into an interim construction agreement and accepted a note of $390,000 from Sundown, Ltd., executed by Plaintiff Anderson. This loan was renewed and extended by a new note March 1, 1983, in the principal amount of $438,000.

After completion of the motel, Plaintiff presented testimony that he found numerous willing buyers of the motel and specifically named several who would have paid enough to discharge the debt, with a dividend left over for the partners. Plaintiff contends that in each instance of a proposed sale, the partner, First Texas Equities, would refuse, which damaged Plaintiff.

Some time later, Jasper Federal Savings and Loan acquired all the assets of Livingston Savings and Loan and foreclosed on the motel property for $587,710.95. Plaintiff's lawsuit charged that Livingston Savings and Loan, by requiring the formation of First Texas Equities, Inc., and then through it refusing to sell the property, was guilty of usury. Plaintiff's petition also uses language that the Defendants prevented "his performance under the contract."

The issues submitted and the jury's answers thereto follow:

1. "Do you find from a preponderance of the evidence that the 50% limited partnership interest of First Texas Equities in Sundown Limited had an ascertainable value on August 30, 1982 [the date Sundown gave Livingston the original note for $390,000]?"

"Answer: We do not."

3. "Do you find ... that ... First Texas Equities ... became the alter ego of Livingston Savings & Loan Association?"

"Answer: We do."

4. "Do you find ... that First Texas Equities did not ever pay to [Plaintiff] the $500.00 which it agreed to pay as its contribution to ... Sundown Limited?"

"Answer: We do not."

6. "Do you find ... that First Texas Equities and Livingston Savings & Loan Association ... unreasonably prevented [Plaintiff] from performing his obligation to repay the loan to Livingston Savings & Loan ...?"

"Answer: We do."

7. "What amount of money ... [was Plaintiff] damaged by virtue of being prevented from [repaying the loan]?"

"Answer: $.00"

8. "Do you find that ... First Texas Equities and Livingston Savings & Loan ... intentionally violated the duty of good faith and fair dealings?"

"Answer: We do not."

Following the jury verdict, the court entered a take nothing judgment against the Plaintiff.

■ Plaintiff's first point of error contends he was entitled to judgment as a matter of law. Plaintiff argues in his brief: "When the Jury found in answer to Special Issue No. 6 that the [Defendants] had unreasonably prevented the [Plaintiff] from performing his part of the obligation, the [Plaintiff] was excused as a matter of law from any obligation to repay the balance of the Note." Then the Plaintiff cites a great many Texas cases, all holding under settled Texas doctrine that where the obligation of a party depends upon a certain condition being performed and the fulfillment of that condition is prevented by the act of the other party, the condition is considered fulfilled. We certainly have no quarrel with this as being the settled Texas law. However, the contract which Plaintiff signed with First Texas Equities expressly provided that the property could only be sold by 51% of the interest ownership. So, whether First Texas Equities was Livingston Savings and Loan's alter ego or not, either or both were making decisions to which Plaintiff expressly agreed in paragraph 11.01 of the partnership agreement. If a contract is invested with a definite legal meaning, there is no necessity to speculate on the intention of the parties. *See* 14 TEX.JUR.3d *Contracts* sec. 186, at 311 et seq. (1981), and authorities cited therein.

▇▇▇ Plaintiff makes this assertion under this point: "[Plaintiff] asserts that Judgment should be for him because the jury found in answer to Special Issue No. 3 that First Texas Equities, Inc., was actually the alter ego of Livingston Savings and Loan." We disagree. Alter ego corporations are not of themselves illegal. *Long Falls Realty Co. v. Anchor Electric Co., Inc.*, 405 S.W.2d 170 (Tex.Civ.App.—Dallas 1966, no writ). This fact, standing alone, creates no cause of action; it merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action which otherwise would have existed only against the first corporation. *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476 (Tex. Civ.App.—Fort Worth 1970, no writ). This point of error is overruled.

▇▇▇ Plaintiff's second point states that the court erred in "overruling the Appellant's Motion for Judgment Non Obstante Veredicto." Plaintiff cites no authority in this discussion, and none of it differs from his first point except he says there is no evidence to sustain the jury's answer to Special Issue No. 1. It was Plaintiff's burden to sustain a "we do" finding to this issue. The jury found he failed to sustain the burden. This is no solace to Plaintiff and cannot be challenged in this manner. *See Clodfelter v. Martin*, 562 S.W.2d 491, 493 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Wolf v. Moughon*, 562 S.W.2d 936, 938 (Tex.Civ.App.—Houston [1st Dist.]), *aff'd*, 576 S.W.2d 603 (Tex.1978). Hatchell & Calvert, *Some Problems of Supreme Court Review*, 6 ST. MARY'S L.J. 303, 323 (1974). This point of error is overruled.

Point of error number three states:

"There was no evidence to support the jury findings in their answers to Special Issue No. 1 or Special Issue No. 6."

▇▇▇ We have above discussed the effect of the jury's answer to Special Issue No. 1. We believe his objection under the point of error under discussion is not to Issue No. 6, as stated above, but Issue No. 7, because on page 10 of his brief, as previously set out in this opinion, he contends that the jury's answer to Special Issue No. 6 ex-

cused him "as a matter of law from any obligation to repay the balance of the Note." It is true Plaintiff offered evidence that had his partner agreed to a sale of the motel, Plaintiff and the partner would each have made some $65,000. But, as we have previously pointed out, the partner, by specific contract language, was under no obligation to sell. Further, the jury had before it Plaintiff's testimony that he had written checks to himself totaling $23,400 and to his son Richard totaling $13,655 out of the borrowed money. These salaries were proper but with his admission that credit cards, gasoline, truck notes, and "what have you" were paid from the fund, the jury certainly had before it evidence that Plaintiff sustained no damages "by virtue of being prevented from [repaying] the loan." Defendants sought no deficiency judgment against Plaintiff either. This point of error is overruled.

▇▇▇ Plaintiff's final point of error states:

"The Trial Court erred in denying Paragraph 8 of the [Plaintiff's] Motion in Limine."

The Supreme Court of Texas has held in *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963):

"It seems that the converse of our holding in the Bridges case [*Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366 (1962)] is that although the overruling of a motion in limine may be error, it is never reversible error."

This point of error is overruled.

The judgment of the trial court is affirmed.

BURGESS, Judge, dissenting.

I respectfully dissent to the majority's disposition of point of error number one. Appellant brought a cause of action wherein he alleged that he had been prevented from fulfilling a contract between himself and Livingston Savings and Loan. This contract was actually the note between himself and the savings and loan. The jury was given an extremely broad issue based upon such cause of action. This issue has

not been attacked on appeal. The majority somehow intertwines this issue with the issue on alter ego. This is unnecessary. The majority goes on to find that First Texas Equities has the absolute right under the partnership agreement to refuse to sell. However, the attorney for appellees characterized the issue more accurately in his closing argument. He stated:

Number six says, 'Did the officers, directors and agents unreasonably prevent Chester Anderson from performing his obligations.' And if you want to believe that, then you have to believe that people are unreasonable when they say let's try to get some more money; and you remember the example I asked Mr. Knauss, if he and I were partners and I came in and said I had a fifty-five thousand dollar offer, and you said no, go get some more money, were you being unreasonable, and he said no, no, I wouldn't be unreasonable at all on that. You will remember the question about that. I submit to you that that should be answered, 'We do not.'

The jury found the actions of both First Texas Equities and Livingston Savings and Loan to have *unreasonably* prevented Anderson from repaying his loan. The majority concedes that the law concerning this is settled and states it has no quarrel with it being well settled. Apparently, they do have a quarrel with the jury's finding, a finding, however, which is unchallenged. Therefore, the trial court need to look no further than the stipulations to determine that the amount of the loan at the time of the foreclosure was $587,000. The parties previously stipulated "that this suit involves a *loan* secured by a Deed of Trust on a tract of land and the improvements located thereon more commonly known as the Sundown Motel...." (emphasis added). Therefore, under the fact found by the jury, and the well settled Texas law, I believe the payment of the note was excused. Consequently, when Jasper Federal Savings and Loan sold the motel for $425,-000, Anderson was, under the Limited Partnership Agreement, entitled to one half of the proceeds.

I would hold the trial judge erred in not entering judgment for Anderson based upon the jury's answer to issue number 6 and would reverse and render judgment for appellant in the amount of $212,500 plus attorney's fees as found by the jury.

This finding makes the alter ego finding superfluous. While the partnership agreement gave First Texas Equities the right to refuse to sell, it did not give the creditor, Livingston Savings and Loan, the right to unreasonably prevent the debtor, Anderson, from repaying the loan. Since the majority concludes otherwise, I respectfully dissent.