**Truman FITZGERALD, Relator,**

v.

**The Honorable Randall ROGERS, Judge, County Court at Law No. 2, Smith County, Texas, Respondent.**

**No. 12–91–00259–CV.**

Court of Appeals of Texas, Tyler.

Nov. 4, 1991.

Charles Clark, Tyler, for relator.

Earl A. Drott, Tyler, for respondent.

PER CURIAM.

This is an original mandamus proceeding arising out of a personal injury suit brought by Ryan Bradshaw (hereinafter "plaintiff") against the Relator, Truman Fitzgerald (hereinafter "the defendant"). The dispute giving rise to this action involves an order entered by the Respondent compelling defendant to execute an authorization by which the plaintiff may obtain information concerning defendant's net worth from financial institutions. That order also ordered turned over to plaintiff, defendant's income tax returns for a five year period and awarded $500.00 in attorney's fees as sanctions to plaintiff. After reviewing the record and considering the arguments and briefs submitted by the parties, the writ will be conditionally granted for a portion of the relief sought by defendant.

Plaintiff filed suit against defendant alleging that defendant "negligently and/or knowingly and intentionally discharg[ed] a firearm striking Plaintiff and causing bodily injuries to Plaintiff and damage to Plaintiff's property." He additionally alleged that "Defendant through his acts and omissions exceeded the test for negligence and committed acts of gross negligence and intentional misconduct exhibiting a callous disregard for the rights of Plaintiff. Plaintiff therefore seeks punitive damages, attorney's fees, and actual damages." In his initial interrogatories and requests for production of documents, plaintiff sought information about defendant's net worth, including defendant's statement of his net worth[1] and defendant's income tax returns with all attachments for the preceding five years. Defendant objected to the request for his income tax returns as being made "for the purpose of harassment and intimidation."

In a second request for production of documents, plaintiff asked defendant again for his income tax returns for the past five years, and also for all financial statements for the preceding five years and all credit applications made during the preceding five years with supporting documentation. Defendant objected to the second request for

1. Interrogatory No. 5 was "Please state defendant's net worth."

production in a motion for protection on the basis that the material requested would invade defendant's right to privacy and would be irrelevant to net worth. Plaintiff then filed an amended motion to compel and for sanctions urging that defendant's objections to the second set of request for production were frivolous and without merit.

On July 22, 1991, the Respondent held a hearing on defendant's motion for protection and on plaintiff's motion to compel and for sanctions. Both parties presented argument but no evidence was offered on any issue other than an amount of attorneys fees necessitated by the discovery resistance. In his comments, Judge Rogers indicated that he thought the law required defendant to give plaintiff the information requested but that he would conduct an *in camera* review of the income tax returns. Defendant's attorney stated that they would produce everything covered by the requests that defendant had kept. The judge then said, "I'll tell you now, whatever he does not have in his possession, Mr. Drott [Plaintiff's attorney] is entitled to ask that your man sign an authorization to get that." That was the first mention appearing in the record of an authorization. After the hearing on the motion for protection and plaintiff's motion to compel, defendant answered in writing plaintiff's second request for production by stating that there were no financial statements or credit applications and that his income tax returns had been submitted to the trial court for *in camera* inspection.[2] There is no evidence in the record to the contrary. Defendant filed a "motion to adopt confidentiality agreement order and opposition to sanctions" on August 14, 1991. By that motion, defendant asked that the documents not be submitted to plaintiff for copying, although he acknowledged that

plaintiff would be allowed to inspect the documents. He asked that the trial court seal the documents until such time as plaintiff proved he was entitled to punitive damages. Further, defendant asserted that sanctions were inappropriate because his objections to the discovery were legitimate.

On August 16, 1991, a telephonic conference was held between the judge and the attorneys for the parties.[3] In explaining to defendant's attorney what would be in the order, the judge indicated that he was requiring defendant to sign an authorization to enable plaintiff to acquire financial information from institutions to whom defendant had given it. Over defendant's stated objections, the court then turned over the income tax returns to plaintiff for copying.[4] The resulting order was as follows:

> The Court, having reviewed said Motions, heard the arguments of counsel, and reviewed the applicable law regarding the matters at issue, is of the opinion that Defendant's Motion to Quash [sic] is entirely without merit and constitutes an abuse of the discovery process … IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that Defendant shall fully and completely comply with Plaintiff's Interrogatories and Requests for Production regarding the discovery of financial information. IT IS FURTHER ORDERED that Plaintiff shall not use nor reveal the information contained in said discovery in any way except in connection with this litigation. IT IS FURTHER ORDERED that Defendant shall execute the Financial Information Authorization which is attached hereto and return same to counsel for Plaintiff within five days from the date of this Order. IT IS FURTHER ORDERED that Defendant shall pay attorney's fees as sanctions to counsel for

---

**2.** In the second request, the income tax returns were request 1, the financial statements were covered by request 2, and the credit applications were request 3. Defendant's response indicated that there were no documents relative to request 1 and request 2 and that the documents relative to request 3 had been submitted to the court for *in camera* review. Neither party has raised the discrepancy in the order of the responses as having created any confusion and since the record makes clear that everyone involved knew

that the income tax returns were the documents that had been submitted for review, we will treat defendant's response to request 1 as being his response to request 3.

**3.** Apparently, defendant's attorney was required to be in federal court in Marshall, Texas, on the same date. He participated by telephone from Marshall.

**4.** Under the supervision of the court reporter.

Plaintiff, Earl Drott, within thirty days from the entry of this Order in the amount of $500.00.

The Financial Information Authorization form attached to the order, and drafted by Plaintiff's attorney, is as follows:

TO: ANY AND ALL BANKS, SAVINGS AND LOANS, CREDIT UNIONS, BROKERAGE FIRMS, OR OTHER INSTITUTIONS POSSESSING INFORMATION OF ANY TYPE REGARDING MY FINANCIAL CONDITION.

I, _____, hereby authorize you to release to Earl Drott, attorney at law, any and all documents and information of any type or manner regarding my income, assets, or financial condition.

----

■ Mandamus is an extraordinary remedy to be employed under certain limited circumstances. The writ will issue only if the trial court refuses to perform a mandatory duty imposed by law or clearly abuses its discretion and there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* Mandamus will generally lie only to correct an order that the trial judge did not have the authority to enter. *See e.g., Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973). The writ will not issue if it would be fruitless or futile. *Wike v. Dagget*, 696 S.W.2d 79, 82 (Tex.App.—Houston [14th Dist.] 1985).

■ In his petition, defendant complains about all three actions ordered by the trial court. Two of those actions, release of the income tax returns and the award of $500.00 in attorneys fees as sanctions; are not appropriate subjects for mandamus under the facts presented to us. The release of the income tax returns was accomplished on August 16, 1991. According to the record, plaintiff's attorney has photocopied those documents and has had them

in his possession for over two months. Thus, defendant's claims of privacy are moot. *See Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex.1962) ("privacy once broken by the inspection and copying of income tax returns by an adversary cannot be retrieved."). Without deciding whether Judge Rogers abused his discretion in ordering the income tax returns turned over to the plaintiff, we hold that no relief can be afforded from that order, because it has already been executed.

■ The award of attorneys fees is not appropriate for mandamus relief either. The $500 award is not a death penalty sanction from which mandamus may lie to review. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 920 (Tex. 1991). Nor is the award so severe as to "raise the real possibility that a party's willingness or ability to continue the litigation will be significantly impaired." *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991). The award is directly related to the abuse perceived by the trial court, and the amount was established by the testimony of plaintiff's attorney at the hearing on July 22, 1991. *See TransAmerican*, 811 S.W.2d at 917. Under these circumstances, the dictate of TEX.R.CIV.P. 215.1.d. that an order awarding to a party seeking discovery, reasonable expenses incurred in obtaining an order compelling that discovery is subject to review on appeal is applicable. Thus, mandamus will not lie to review such an order.

■ We are left with that portion of the Respondent's order that compels defendant to execute an authorization for financial information. Plaintiff did not request this document in any of his discovery requests. He requested financial statements and credit applications. He has not asked defendant whether such documents exist in the hands of any "banks, savings and loans, credit unions, brokerage firms or other institutions." In fact, defendant's response that there are none of these documents, under Rule 166b(2)(b), indicates that the documents requested do not exist.[5]

----

**5.** Rule 166b(2)(b) provides that a party may obtain discovery of relevant documents that are within another person's possession, custody or control. The Rule expressly dictates that if "the

person has a superior right to compel the production from a third party" he has possession, custody or control for the purposes of the Rule.

There is no evidence that defendant's answer was untrue. Furthermore, the authorization as drafted and ordered, is unlimited in any fashion as to the institutions to which it relates.

Under the facts as shown by the record before us, we find that Respondent Judge Rogers' August 16, 1991 order was a clear abuse of discretion to the extent it ordered defendant to execute a financial authorization for disclosure of any and all financial data concerning the defendant from any institution holding such information without regard to its existence to the time period covered by, or source of, the information. Such relief was not requested. It relates to a discovery request answered by defendant, which answer has not been impeached in any fashion. The discovery rules provide no authority for such order.

The writ is conditionally granted in part. We are confident that Judge Rogers will vacate his August 16, 1991 order to the extent it orders defendant Truman Fitzgerald to execute the Financial Information Authorization. The writ will issue only if he fails to do so within thirty days of the date of our judgment herein.