Peter KERN and Texas Health
Enterprises, Inc., Relators,

v.

David L. GLEASON, Judge, 47th
District Court, Respondent.

No. 07–92–0251–CV.

Court of Appeals of Texas,
Amarillo.

Oct. 19, 1992.

Underwood, Wilson, Berry, Stein & Johnson, Kelly Utsinger, Kevin P. Parker and Gavin J. Gadberry, Amarillo, relators.

Culton, Morgan, Britain, & White, Charles R. Watson, Jr., Kirt E. Moelling, Amarillo, respondent.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

In this original mandamus proceeding, Peter Kern and Texas Health Enterprises, Inc., [Texas Health] [collectively called relators] request this court to direct the Honorable David L. Gleason, Judge of the 47th District Court of Potter County, to set aside his discovery order. For the reasons expressed, we will conditionally grant the writ.

The real parties in interest, Gracie and Angie Nanez, initiated the underlying action to recover damages from relators. The sisters alleged that on November 3, 1987, they were residents of Vida Nueva Care Center in Amarillo, now Westgate Care Center [Westgate Care], one of many nursing homes operated by Texas Health. The damages allegedly were caused when Bernard Kelly, a former Vida Nueva employee, attacked them in the early morning hours of November 3rd while they were sleeping. Kelly had previously been convicted of a felony.

The sisters alleged negligence, gross negligence, fraud, several deceptive trade practices, and breach of a duty of good faith. They also plead for exemplary damages under several theories. In a supplemental petition, they further alleged that Texas Health is synonymous with Kern and requested that the corporate entity be disregarded, alleging that (1) Texas Health is the alter ego of Kern; (2) Texas Health has been used as a sham to perpetuate actual or constructive fraud; (3) Texas Health is being used as a means for evading existing legal obligations; (4) Texas Health is relied upon to justify a wrong; (5) Texas Health is inadequately capitalized; (6) Kern has denuded Texas Health for his personal gain; (7) Kern is liable directly to the sisters under the Trust Fund Doctrine and (8) Kern's total personal control over the operations of Texas Health lead to the conclusion that he knowingly participated in the tortious and fraudulent acts complained of herein.

In their third motion to compel production signed on March 19, 1992, the Nanez sisters sought to obtain documents requested in (1) Kern's April 22, 1991, deposition notice and (2) their written requests for production served in March 1990. In the notice of intent to take Kern's deposition, he was asked to produce documents specified in an attached exhibit. In pertinent part, the six-page exhibit asked Kern to produce:

1. All documents reflecting Kern's net financial assets since January 1, 1987.

2. All documents reflecting the disposition of assets since January 1, 1987.

3. Complete copies of all of Kern's personal income tax returns from 1987 to 1991 and all entities in which he owned ten percent or more of the stock or as-

sets or functioned as a director or officer.

4. All documents reflecting the receipt of salary, dividends, proceeds of sales or other assets by Kern from fourteen different corporations.

5. All documents reflected or relating to any personal guaranty of Kern of any loans, leases, or other obligations or payments to any entity or person since January 1, 1987.

6. The legal description of all real property owned by Kern and his wife since November 3, 1987, including documents identifying the date of the purchase, the date of the sale, the purchase price and the sales price.

7. All documents reflecting or relating to any and all relationships which Kern has with any of fourteen corporations or with any other company in which he owned more than ten percent of the assets or stock or functioned as a director or officer.

8. All documents relating to Kern's dealings with any corporation or entity in which he had owned more than ten percent or served as an officer or director and which has been dissolved.

9. A compilation of all attorney's fees billed to Kern, Texas Health, Health Enterprises of America, Inc. or Health Enterprises of America since January 1, 1987.

Relators did produce some of the requested information at the deposition and before the hearing on the third motion to compel. In pertinent part, relators have produced the following:

1. Texas Health's balance sheets and statements of income from operations from 1987 through 1990.

2. Kern's Federal Partnership Return, K-1's, without attaching the expense schedules, for Canterbury Care Centers Mgmt. Co., Partnership, a predecessor to H.E.A. Management Group, 1268 No. River Road N.E., Warren, Ohio, from 1987 through 1989.

3. One W-2 form from H.E.A. Management Group, 401 N. Elm Street, Denton, Texas, for 1989.

4. Texas Health's schedule of rents paid from various nursing homes to Kern from 1987 to 1990.

5. Texas Health's schedule of interest paid from various nursing homes to Kern from 1987 through 1990.

6. Dividends received from Texas Health.

On April 13, 1992, relators filed objections to the Nanez sisters' discovery requests, a response to their third motion to compel, and moved for a protective order. Kern objected to the production of his personal financial information and his dealings with other corporations. On May 1, 1992, the sisters filed their supplemental petition alleging that the corporate veil should be pierced.

After a hearing on June 3 and 4, 1992, the trial court issued an order compelling Kern to produce the following documents concerning his personal financial condition:

1. any and all financial statements reflecting his personal financial condition from January 1, 1987, including any financial statement supplied to any bank, lending institution, or any other person or entity.

2. copies of his personal income tax returns since 1987 including all schedules attached thereto, including any 1040 Schedule B's reflecting any dividends received and from what source they were received; any K-1's or Schedule K's for partnerships, any Schedule E's for rent received; and anything reflecting ownership of dividends received from the ownership in any corporations in which he owns stock. These documents were subject to a confidentiality requirement and the Nanez sisters were ordered not to disclose these documents to anyone other than their attorneys and accountants without prior approval of the court.

3. a legal description of all real property owned in whole or in part by Kern or his wife as community property or tenants in common or joint tenants from November 3, 1987, until the present.

4. a legal description of any sky boxes or airplanes owned in whole or in part by him or his wife as community property or

tenants in common or joint tenants from November 3, 1987, until the present.

5. documents reflecting his dealings with any corporation or other business entity in which he has owned greater than a ten percent ownership interest or served as an officer or director.

In its order, the trial court further found that the filing of the third motion to compel was the only reason anything was produced by relators. Accordingly, the trial court awarded sanctions in the form of attorneys fees against Kern and Texas Health in the amount of $5,100 and $2,850, respectively.

Kern attacks the order compelling production on the grounds it is irrelevant, overly-broad, unduly burdensome, harassing, duplicitous, and cannot lead to the discovery of any admissible evidence. Kern also argues that production would invade his privacy rights in that the documents contain sensitive financial information.

■ In reviewing the instant mandamus action, we are mindful that a mandamus will issue only if the trial court clearly abused its discretion and there is no adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–43 (Tex.1992) (orig. proceeding). A trial court abuses its discretion when it reaches a conclusion so unreasonable and arbitrary as to amount to a clear and prejudicial error of law. *Id.* at 839.

■ With respect to factual issues, we may not substitute our opinion for that of the trial court. The relator must show that the trial court could have only reached one result. Even if we would have decided the issue differently, we cannot disturb the trial court's action unless it is established to be unreasonable and arbitrary. *Id.* at 840.

■ The Texas Supreme Court has restricted the use of mandamus to challenge discovery orders. No longer may a relator obtain discovery review by mandamus on the basis that an appeal is inadequate merely because it might involve more cost or delay than obtaining an extraordinary writ. *Id.* at 842. A party may still obtain review by mandamus where the resisting party does not have an adequate remedy on appeal because the appellate court would not be able to "cure" the trial court's discovery order. This occurs when a discovery order forces production of patently irrelevant information, which clearly imposes a "burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." *Id.* at 843.

■ The Nanez sisters contend that the relators may not use a writ of mandamus because they have failed to show that there is no adequate remedy by appeal. We disagree.

Here, the discovery order compels Kern to produce his income tax returns, all financial statements, legal descriptions of land he owns, legal descriptions of sky boxes or airplanes, and dealings with other entities in which he is a ten percent owner. Kern does not have an adequate remedy by appeal from the required disclosure of virtually all income earned and assets owned by him since 1987. This is because after the tax returns and asset lists have been inspected, examined and reproduced, a subsequent holding that the trial court erroneously issued the order could never cure the error. Here, the question on appeal would merely be an academic one. *See id.* at 843; *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex.1992) (orig. proceeding); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959) (orig. proceeding).

■ The Nanez sisters contend that relators waived their right to mandamus relief because they did not provide us with a sufficient record.[1] However, the only portion of the record that is missing is the arguments of counsel. Since statements of counsel are not evidence, they are not required to be included in the statement of facts. *See Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex.1988) (orig. proceeding). Hence, the record is adequate and relators have not waived their right to relief by mandamus.

1. The Nanez sisters do not point out what portion of the record is incomplete.

A brief review of the facts relating to the mandamus is necessary. Peter C. Kern was the sole stockholder of Texas Health on November 3, 1987. He also owned about 120 nursing home leaseholds through various corporations. Kern owns majority interests in Health Enterprises of America (H.E.A.), H.E.A. Management Group, H.E.A. of Iowa, H.E.A. of Michigan, H.E.A. of Wisconsin, and Texas Health. He also owns Jennifer–Nicole, an airplane leasing company with two airplanes used by all the nursing home corporations. Kern owned more than 93% of the stock in Texas Health at the deposition date.

Before 1987, Kern operated and managed his companies from Warren, Ohio, through Canterbury Centers Management Company, Partnership. Kern sold about twenty-five of his nursing homes to Horizon Health Care, a New York Stock Exchange Company in which he owned no interest. Subsequently in May 1987, Kern moved his corporate headquarters to Denton, Texas. Kern personally purchased a large building, which he remodeled and leased to H.E.A. Management Group as its corporate headquarters. Kern explained that H.E.A. Management Group was the corporation through which all accounting and payroll was conducted for all the nursing home corporations. Kern reported that no profit was made by this corporation as the earnings were distributed each year. The day-to-day management of the nursing homes including Vida Nueva is conducted by the nursing home administrators and field managers. Kern has never met the Nanez sisters and received all information about the attack through third parties.

Kern reported that all of Texas Health's 97 nursing homes are in Texas. In most of the nursing home facilities, Texas Health owns the leasehold while others own the lands and buildings.[2] Kern stated that Texas Health owned the leasehold interest in the Westgate Care facility, but another party owns the land, building, and equipment. Texas Health owns no tangible assets at Westgate Care. At about fifteen to twenty locations, Texas Health owns all real property underlying the leaseholds. Kern reported that Texas Health owed no money on some of these facilities, while others were encumbered by debt. The primary assets of Texas Health are the leaseholds and real property.

Kern has personally loaned Texas Health approximately $3,650,000.00. Kern receives about $340,000 per year in salary from H.E.A. Management Group, which includes wages from several companies. Kern reported that when he personally buys real property and leases it to Texas Health, he structures the loan so he can make a 15% return on his money. Since 1987, Kern has received salary, rents, interest, and dividends from Texas Health. The balance sheets from 1987 through 1990, provided through discovery, reflect a thinly capitalized company with a debt-equity ratio average from about four to eight percent.

Robert Damore, Texas Health's General Counsel, testified that Kern had signed sixty-four personal guarantees for Texas Health. Damore reported that in one year Texas Health paid Kern $795,692 interest, $826,000 dividends, and $1,691,000 rent. Kern received about $340,000 salary, most of which was attributable to Texas Health. These amounts totaled $3,652,692 but do not include any amount Kern may have received from Jennifer–Nicole or Texas Health's portion of rent for the corporate headquarters paid to him through H.E.A. Management Group.

■ In pretrial discovery matters, the party attempting to restrict discovery has the burden of pleading and proving the basis for the desired limitation. *Chamberlain v. Cherry*, 818 S.W.2d 201, 205 (Tex. App.—Amarillo 1991, no writ) (orig. proceeding); *Independent Insulating Glass/Southwest v. Street*, 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd w.o.j.) (orig. proceeding). *See also Masinga v. Whittington*, 792 S.W.2d 940,

---

2. Kern owns some of the underlying real property leased to Texas Health for its nursing home facilities. However, Kern reports that nearly all of the money collected as rents from Texas Health goes to pay mortgage payments.

942 (Tex.1990) (orig. proceeding) (Doggett, J., concurring).

■ Absent a privilege or specific exception, a party is entitled to discover any relevant material. Discovery is not restricted to facts that will only be admissible at trial; certain fishing expeditions are permissible. To enhance the prospect that all pertinent evidence will be disclosed and brought before the trier of fact, facts are discoverable if they are reasonably calculated to lead to the discovery of material evidence. *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984) (orig. proceeding). In an action where exemplary damages may be recovered, a party's net worth is relevant and discoverable. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988) (orig. proceeding).

■ The discovery rules do not contemplate the exclusion of relevant evidence unless the evidence offered is unfairly prejudicial, privileged, or incompetent. Discoverable information is also limited by legitimate interests of opposing parties such as avoiding harassment, disclosure of privileged information, or overly-broad requests. *Jampole v. Touchy*, 673 S.W.2d at 573. The trial court has authority to consider whether a party's discovery request involves unnecessary harassment or invasion of personal or property rights. *Lunsford v. Morris*, 746 S.W.2d at 473.

■ The Nanez sisters correctly contend that since they alleged grounds for recovery of exemplary damages, net worth is discoverable. The Nanez sisters further contend that their pleadings seek exemplary damages from Texas Health and Kern derivatively as a shareholder of Texas Health. They therefore reason that since both Texas Health and Kern are potentially liable for exemplary damages, they are entitled to discover the financial statements of both Texas Health and Kern, in order to show each party's net worth.

■ The corporate form generally protects shareholders, officers and directors from liability for corporate obligations. The corporate entity will be disregarded and the shareholders, officers and directors made personally liable when the corporate form has been used as an unfair device to achieve an inequitable result. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986); *see generally Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex.1968). Where the corporate shield is used as an essentially inequitable mechanism—when it is utilized as a pretense—courts may act in equity and disregard the rules of law to avoid an unfair result. *Matthews Const. Co. v. Rosen*, 796 S.W.2d 692, 693 (Tex.1990).

■ It is established that although a corporate entity may be the alter ego of an individual or the individual may be the alter ego of the corporation, these facts do not create a separate cause of action against the corporation or the individual. *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex.Civ. App.—Fort Worth 1970, no writ); *accord In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 n. 11 (5th Cir.1987); *Gallagher v. Bintliff*, 740 S.W.2d 118, 119 (Tex.App.— Austin 1987, writ denied); *Anderson v. Jasper Fed. Sav. & Loan*, 738 S.W.2d 768, 771 (Tex.App.—Beaumont 1987, writ denied). The piercing of the corporate veil is not a separate cause of action but a means of imposing individual liability where it would not otherwise exist. *Equinox Enters. v. Associated Media Inc.*, 730 S.W.2d 872, 877 (Tex.App.—Dallas 1987, no writ). The various doctrines for disregarding the corporate entity are only remedial, for they only expand the potential sources of recovery. *Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 297 (Tex.App.—El Paso 1991, no writ).

Since the instant record establishes that Kern had nothing to do with the day-to-day operations at Vida Nueva, never met the sisters, and committed no acts or omissions outside his corporate position with regard to them, Kern could not be personally liable for any tort, deceptive trade practice or breach of good faith.

Even assuming the Nanez sisters are successful in their cause of action, the liability will be that of Texas Health not Kern. Only by piercing the corporate veil

will the Nanez sisters be able to impose liability on Kern. Even if the corporate veil is pierced, the net worth of the corporation, not Kern, is the basis for determining exemplary damages.

If, as the Nanez sisters suspect, the net worth of Texas Health at the time of trial is artificially low due to Kern's denuding of the corporation, the amount of bogus expenses and/or money taken out of the corporation should be included in order to establish Texas Health's "true net worth." [3] The financial records of Texas Health should contain the evidence necessary to establish the "true net worth" of Texas Health. Therefore, Kern's net worth is not material under this record.

The Nanez sisters also argue that Kern's financial statements and his net worth are relevant to his management of Texas Health. The Nanez sisters contend their request to discover Kern's net worth is a permissible means of gathering evidence to prove their pleading that the corporate veil of Texas Health should be pierced. Unfortunately, the Nanez sisters are fishing in the wrong hole.

The instant record shows that Kern's income comes from several sources unrelated to Texas Health. Kern's net worth would therefore be immaterial as to whether Texas Health's corporate character should be disregarded. While Kern's financial statements would shed little light on his management or mismanagement of Texas Health, the financial records of Texas Health are the properly discoverable means to provide the information necessary on the question of piercing the corporate veil.

Additionally, the trial court's order is so broad that it would force Kern to reveal all of his assets, liabilities, equity, and income. Much of this information comes from business entities and personal assets that have nothing to do with Texas Health. Since the instant record establishes that Kern personally committed no act or omission that would make him independently responsible,

*Lunsford v. Morris* does not compel Kern to disclose his personal net worth.

If the financial records of Texas Health are incomplete or fail to clearly show the financial history of the corporation and Kern's dealings with the corporation, the Court might then entertain a motion for an in camera inspection of Kern's financial statements. The Court could examine Kern's personal records and reveal to the Nanez sisters any information bearing on the question of Kern's mismanagement of Texas Health.

■■■■ We now turn to the question of whether Kern's income tax returns are discoverable. Income tax returns are subject to discovery to the extent they are relevant and material to the issues in the cause. *Maresca v. Marks,* 362 S.W.2d 299, 300 (Tex.1962) (orig. proceeding); *Crane v. Tunks,* 328 S.W.2d at 440. In certain cases, income tax returns are discoverable to establish net worth. *See Chamberlain v. Cherry,* 818 S.W.2d at 205–207; *see also Sears, Roebuck & Co. v. Ramirez,* 824 S.W.2d at 559. Having determined Kern's net worth to be undiscoverable, the disclosure of Kern's income tax returns would then only be discoverable on the corporate veil issue.

Discovery of those portions of Kern's income tax returns regarding sources of income directly or indirectly attributable to Texas Health would be probative in determining whether the corporate veil should be pierced. However, payments directly or indirectly made from Texas Health to Kern would also establish this point. Therefore this evidence is discoverable through the records of both Texas Health and Kern. Weighing the necessity of the request against the privacy rights of Kern, we find it reasonable to require the Nanez sisters to first attempt to discover the relevant evidence from the records of Texas Health. Should Texas Health's records be incomplete or fail to clearly show payments or transfers of assets directly or indirectly to Kern, then a renewed request for Kern's income tax returns could be made. On the

---

**3.** Such expenses would not only include payments to Kern but would include all bogus

expenses and/or dissolution of the assets of Texas Health.

record before us, however, we find the order for production of Kern's income tax returns to be an abuse of discretion.

In summary we have found in the record no showing of a necessity for an invasion of Kern's right to privacy in his income tax returns and his personal financial statements. Absent a showing that Texas Health's financial records were not available, or were incomplete, we see no justification to require Kern to produce his financial statements or income tax returns. The probable availability of the relevant evidence in the records of Texas Health requires a preliminary inquiry into those records. Such a threshold showing of necessity served well in the *Chamberlain v. Cherry* case and we think it equally applicable in this case. The ordered discovery of Kern's financial statements and income tax returns is therefore impermissibly broad and invasive of Kern's right to privacy.

█ The compelled discovery in three, four, and five above also constituted a clear abuse of discretion. A legal description of all real property owned by Kern or his wife since November 1987 is irrelevant and overly-broad. A list of such assets alone does not show those properties were bought with Texas Health assets nor would the real property holdings of Kern and his wife establish that Kern had denuded the corporation. Likewise, the discovery of Kern's real property is not reasonably calculated to lead to the discovery of admissible evidence concerning the management or the net worth of Texas Health. A legal description of sky boxes or planes owned since November 1987 is irrelevant and overly-broad, for such a revelation would not, standing alone, tend to prove a denuding of the corporation.

█ Similarly, the order to provide documents that reflect Kern's "dealings with any other corporation" in which he owns at least a ten percent interest is overly-broad.[4] Once again the legitimate inquiry extends only to dealings between the other corporations and Texas Health. Absent evidence of "dealings" between Texas Health and the other corporations in which Kern owned an interest, Kern's "dealings with other corporations" is not discoverable. The legitimate inquiry is not Kern's "dealings" with the other corporations but rather whether he used such other corporations as vehicles for looting Texas Health.

In summary, the trial court's order compelling the discovery is so arbitrary and unreasonable that it constitutes a clear and prejudicial error of law. The compelled discovery is so overly-broad and irrelevant that it clearly imposes a burden on Kern far out of proportion to any benefit that may obtain to the Nanez sisters. Consequently, the order compelling discovery of Kern's financial statements is overly-broad, irrelevant, and is not reasonably calculated to lead to the discovery of material evidence.

█ We now address several additional arguments made by the Nanez sisters. Based on their trust fund theory, the Nanez sisters argue that under the pleadings and evidence, the location and nature of Kern's personal assets, or assets owned by a business entity in which he holds an important interest, is relevant in ascertaining whether those assets were acquired with Texas Health funds. The trust fund doctrine permits an unpaid creditor of a dissolved corporation to pursue assets distributed to its shareholders or third parties on the theory that an equitable lien will burden the transferred property. *Henry I. Siegel Co. v. Holliday*, 663 S.W.2d 824, 827 (Tex.1984); *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 550 (Tex.1981). Since Texas Health has not been dissolved and the Nanez sisters are not yet creditors, they may not rely on the trust fund doctrine to secure the compelled information. Moreover, if the Nanez sisters discovered the location and nature of the assets, such evidence would not establish the assets were acquired with Texas Health's funds.

The Nanez sisters also argue that the discovery of Kern's assets is necessary to determine whether Kern incurred expenses

---

**4.** We assume from the record Kern has revealed any and all corporations and/or business enti-
ties in which he owns more than a ten percent interest.

and artificial charge-offs against Texas Health's funds. Once again, the compelled discovery is overly-broad because the existence of an asset in Kern's name does not indicate that the asset was acquired by an artificial expense. Again we note the primary source for the discovery of such evidence is the records of Texas Health.

The Nanez sisters argue that they are attempting to determine the extent to which Kern uses his resources to perpetuate constructive or actual fraud as to the corporate character of Texas Health. Again, the compelled discovery was not restricted to discover such information and is overly-broad.

■ Kern also complains of the award of attorneys fees. Here, the award of attorneys fees did not constitute a death penalty sanction from which a writ of mandamus would issue. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 920 (Tex.1991) (orig. proceeding). The award is not so severe as to raise the real possibility that relators' willingness or ability to continue the litigation is significantly impaired. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991) (orig. proceeding). Relators have tendered the amount due under the order to the clerk of the court. The award is in direct relation to the abuse perceived by the trial court, and the amount was established by the testimony. Under these circumstances, the order awarding attorneys fees is not subject to mandamus but would be subject to review upon appeal. *Fitzgerald v. Rogers*, 818 S.W.2d 892, 895 (Tex.App.—Tyler 1991, no writ) (orig. proceeding). Nothing we have stated in this opinion would prevent the trial court in light of our opinion from setting aside the award upon application of relators.

Anticipating that Judge Gleason will vacate his order compelling discovery, a writ of mandamus will issue only if he fails to do so.