NO. 07-01-0283-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 20, 2001

_____

IN RE ENERGAS COMPANY, RELATOR

_____

**ON PETITION FOR WRIT OF MANDAMUS**

Before BOYD, C.J., and QUINN and REAVIS, JJ.

In this original proceeding, relator Energas Company, seeks a writ of mandamus requesting that we order the Honorable David L. Gleason, Judge of the 47th District Court of Potter County, to vacate his order requiring relator to produce documents covering its pipelines in the entire city of Amarillo for a 12-year period of time and documents relating to the decision to cathodically protect pipelines within Amarillo for the past 30 years. For the reasons set forth, we conditionally grant in part and deny in part the relief requested.

Relator, a public utility, is engaged in the business of supplying natural gas to business and residential customers in the city of Amarillo and elsewhere. Forest Harvey Miller, deceased, resided at an apartment located at 2713 West 9th Street in Amarillo. On September 13, 1999, he was severely injured by an explosion at his apartment and died sixteen days later as a result of burns received in the explosion. Contending that the explosion was caused by a leaking gas main pipeline located approximately 17 feet from the apartment, real party in interest, Mary Miller Speed, Dependent Administratrix of the Estate of Forest Harvey Miller, Deceased (hereafter real party), filed suit in the 47th District Court of Potter County styled Mary Miller Speed, Dependent Administratrix of the Estate of Forest Harvey Miller, Deceased versus Energas Company, bearing cause number 87-247-A, seeking to recover ordinary and exemplary damages. By her pleadings, real party alleged that the injuries to Mr. Miller resulting in his death were proximately caused by the negligence of relator as follows:

(A) failing to make sufficient inspections to discover the leaks in the main before harm resulted to the decedent from these conditions.

(B) failing to maintain or properly utilize available monitoring equipment and devices that would have alerted the Defendant of the dangerous gas leakage by showing the existing gas pressure in the main.

(C) operating and maintaining the main in a dangerous and defective condition.

(D) failure to perform proper repair and maintenance of the main.

(E) failure to stop the flow of gas through the main after learning of its leaking condition, until the leaks could be repaired.

2

(F) failing to repair the main so as to prevent gas leaking from it, after learning of its leaking condition.

(G) failing to warn the decedent of the peril or danger caused by the leaking main, after learning of its leaking condition.

In addition to the allegations of ordinary negligence, real party also alleged that the negligence of Energas was committed with malice and/or gross neglect.

In response to real party's third request for production of documents, Energas responded with objections on March 12, 2001.[1] Real party filed her motion to compel discovery on April 4, 2001. After a hearing, the trial court signed its order on June 7, 2001, granting real party's motion to compel and overruled Energas's objections to discovery and prayer for protection. As material here, Energas contends the trial court erred in concluding that real party's requests for discovery were narrowly tailored and relevant to issues involved in the underlying case and in ordering Energas to produce documents pertaining to the entire city of Amarillo for a 12-year period of time and documents relating to the decision to cathodically protect[2] lines within Amarillo for a 30-year period.

---

[1]Energas complains about the ruling of the trial court on 22 requests for production. Eleven of the requests are expressly based on 49 C.F. R. Part 192, Section 192.457 or Section 192.465, and applicable Texas Railroad Commission Supplements, which regulations contain provisions for cathodic protection of buried gas pipelines and pipeline inspections to discover areas of corrosion. The remaining eleven requests relate to the efforts of Energas to comply with the regulations.

[2]**Cathodic protection.** A means of protecting a buried pipe against corrosion. A current is directed onto the pipe by sacrificial annodes (metal ribbons) placed in the ground, parallel to and connected to the pipe. Pipe will not corrode if sufficient current flows onto the pipe. H. Williams, C. Meyers, P. Martin, B. Kramer, Oil & Gas Law, Vol 8,

3

## Standard of Review

A writ of mandamus will only issue to correct a clear abuse of discretion or violation of a duty imposed by law when there is no adequate remedy by appeal, and the relator has the burden to present the appellate court with a record sufficient to establish the right to mandamus. Walker v. Packer, 827 S.W.2d 833, 837-39 (Tex. 1992) (orig. proceeding). With respect to factual matters committed to the trial court's discretion, the appellate court may not substitute its judgment for that of the trial court. *Id*. However, a review of a trial court's determination of controlling legal principles is entitled to much less deference. *Id*. at 840. In our analysis, we "must focus on the record that was before the court and whether the decision was not only arbitrary but also amounted 'to a clear and prejudicial error of law.'" In re Bristol-Myers Squibb Co., 975 S.W.2d 601, 605 (Tex. 1998).

As is common in original proceedings, the record presented here is not as complete as a record presented after a trial on the merits. The record here consists only of (1) real party's original petition, (2) real party's motion to compel responses to her third request for production, with eight exhibits attached including Energas's answers to some request for admissions, objections to discovery requests, and Energas's objections to the 22 requests for production[3] that Energas challenges here, (3) Energas's response to real party's motion

---

1998.

[3] Energas challenges request numbers 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 21, 22, 24, 30, 34, 36, 37, 38, and 41.

to compel, with the affidavit of David Gates, a vice president for Energas attached, (4) a reporter's record of the argument of counsel[4] upon the presentation of the motion to compel and Energas's opposition to the motion, and (5) the trial court's order.

By its sole issue, Energas contends the trial court abused its discretion in ordering it to produce documents pertaining to the entire city of Amarillo for a 12-year period of time and documents relating to the decision to cathodically protect lines within Amarillo for a 30-year period of time.  In summary, Energas objected to production of the records contending that the requested documents were not relevant, and were overly broad and burdensome.  Rule 192.3(b) of the Texas Rules of Civil Procedure[5] provides:

> (b) *Documents and Tangible Things.* A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents and tangible things (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations) that constitute or contain matters relevant to the subject matter of the action.  A person is required to produce a document or tangible thing that is within the person's possession, custody, or control.

Because the rule requires that documents and tangible things must be relevant to the subject matter of the action, we first address the question of relevance.

---

[4]*See* Kern v. Gleason, 840 S.W.2d 730, 734 (Tex.App.--Amarillo 1992, no pet.) (holding that argument of counsel is not evidence).

[5]All rule references herein are to the Texas Rules of Civil Procedure.

5

Relevance

As summarized above, the underlying action was commenced following a gas explosion at 2713 West 9th Street in Amarillo resulting in fatal injuries to Forest Harvey Miller. By answers to request for admissions, Energas admitted:

- it owned and operated the low pressure steel main located at or near 2713 West 9th Street involved in the lawsuit;

- a leak detection survey performed in August 1998 on the system which included the line at or near 2713 West 9th Street found over 80 leaks over an area of approximately three square miles;

- there was no cathodic protection and no effective external coating on the low pressure steel main located at or near 2713 West 9th Street on September 13, 1999;

- that on September 13, 1999, or within a day or two thereafter, the low pressure steel main located at or near 2713 West 9th Street, was found to have active external corrosion with holes and large-scale pitting; and

- that soon after September 13, 1999, Energas replaced the low pressure steel main located at or near 2713 West 9th Street with polyethylene pipe.

Although the first 11 of the challenged production requests expressly reference sections 192.457 and 192.465 of Title 49 of the Code of Federal Regulations,[6] and the following requests also seek documents within the context of cathodic protection and inspection of buried lines, Energas did not object on the grounds that sections 192.457 and 192.465 did not apply to the subject line or otherwise question the applicability of the regulations.

[6]All regulation references herein are to Title 49 of the Code of Federal Regulations.

6

Although Energas contends here that relevant information is limited to the history of the particular line serving 2713 West 9th Street, it does not argue or contend that records relating to Energas operations in the context of section 192.457 entitled "External corrosion control:  Buried or submerged pipelines installed before August 1, 1971," or section 192.465 entitled "External corrosion control: Monitoring" are not relevant. Moreover, based upon this record, records applying  to "the particular line serving 2713 West 9th Street," may include records of Energas operations as they relate to the regulations.  Considering the admissions of Energas and the absence of any objection or evidence in this record questioning the applicability of the regulations, we conclude that sections 192.457 and 192.465 are facially relevant to the claims of real party and, accordingly, the trial court did not abuse its discretion in holding that the relevancy requirement of Rule 192.3(b) was satisfied.

Overly Broad and Burdensome

The discovery rules do not contemplate the exclusion of relevant evidence unless the evidence sought is unfairly prejudicial, privileged, or incompetent.   Further, discoverable information is also limited by legitimate interests of opposing parties such as avoiding harassment or overly-broad requests.   Kern v. Gleason, 840 S.W.2d 730, 736 (Tex.App.--Amarillo 1992, no pet.).  While discussing the new discovery rules, in In re Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999), the Court held:

7

A party resisting discovery, however, cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. The party must produce some evidence supporting its request for a protective order.

Rule 192.4 allows the trial court to limit discovery if it determines that:

(a) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or

(b) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

The affidavit of David Gates is the only evidence provided by Energas to support its objections to the requested discovery. As material here, the affiant states:

(a) In the City of Amarillo, Energas has approximately 5,062,906 total feet, or 958.88 miles, of gas mains.

(b) Energas performs leak surveys on its pipe in the City of Amarillo as frequently as twice per year ranging to a maximum time of five years between surveys. The frequency of leak surveys depends upon the type of pipe and the area being surveyed.

(c) Energas, in responses to discovery, has provided Plaintiff with documents relating to leak surveys, leaks found and repaired reports, and cathodic protection in an area with a 500 yard radius from 2713 West 9th Street, Amarillo, Texas, which is the site of the incident in question. *To require Energas to respond to Plaintiff's requests aimed at the City of Amarillo as a whole would burden Energas and its personnel, in that Energas*

8

> *would incur travel expenses plus work time that is lost, in addition to the*
> *expense of locating and copying thousands of pages of documents.*

(Emphasis added). Significantly absent from the affidavit is any evidence that the requested records are cumulative or duplicative or supporting the grounds for limiting discovery set forth in Rule 192.4(b). Although the statement in (a) from Gates's affidavit constitutes a fact statement concerning the size of the Energas system in Amarillo, the statement in (b) does not implicate Energas's claims that the requests for production were overly broad and burdensome. Moreover, the statement that pipe is inspected twice per year is no evidence of Energas's practice ten years before the explosion on September 13, 1999. The first portion of (c) of the affidavit does not address the question of burdensomeness or that the requests are overly broad, and the emphasized portion of (c) constitutes only a conclusory allegation that production of the requested documents would be burdensome, contrary to In re Allford Chevrolet-Geo, 997 S.W.2d at 181. Further, the affidavit does not address or discuss 49 C.F.R. § 192.465, which provides in part that:

> (a) Each pipeline that is under cathodic protection must be tested at least once each calendar year, but with intervals not exceeding 15 months . . . . At least 10 percent of these protected structures, distributed over the entire system must be surveyed each calendar year, with a different 10 percent checked each subsequent year, so that the entire system is tested in each 10-year period.

It is significant to note that the regulation contemplates that "the entire system," or as presented here, the entire city of Amarillo, be inspected at least every ten years.

9

The fact that a discovery request is burdensome is not enough to justify protection; "it is only *undue* burden that warrants nonproduction." ISK Biotech Corp. v. Lindsay, 933 S.W.2d 565, 568 (Tex.App.--Houslton [1ˢᵗ Dist.] 1996, no pet.). *See also* In re Alford Chevrolet-Geo, 997 S.W.2d at 181 (requiring demonstration of undue burden or harassment). Accordingly, we conclude the trial court did not abuse its discretion in directing that the records be produced covering the entire system of Energas in Amarillo.

We now turn to the question regarding the period of time for which record production should be required. Most of the requests for production were tailored to require production of records ten years prior to the explosion and from the date of the explosion to the time of record production. However, requests 4, 17, and 24 did not contain any time limitation for record production.[7] As to requests 4 and 17, the trial court limited record production to the ten years before the explosion. However, as to request 24, whether by oversight or otherwise, the trial court did not impose any time limitation. Therefore, under the order Energas is required to produce all documents regarding its decision to cathodically protect lines within Amarillo that were installed prior to 1971 without any time limitation.

---

[7]Request number 30 does not expressly include a time limitation; however, the deposition referenced in the request demonstrates that records since 1995 would be sufficient to satisfy the request.

10

In Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995), the plaintiffs sought to prove a general "corporate strategy to ignore safety laws." Although acknowledging the plaintiffs' rights to discover evidence of safety policies and practices, the Court held that a request for records "without limitation as to time, place or subject matter, is overbroad." Then, in In re American Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998), the Court held that requiring production of records for a 50-year period was an abuse of discretion. Although the court recognized that parties must have some latitude in fashioning discovery requests, the right is not unlimited and "[t]he trial court *must* make an effort to impose reasonable discovery limits." (Emphasis added). *Id.*

Considering that the trial court set a pattern of limiting record production to the ten years prior to the explosion, and that 49 C.F.R. § 192.465(a) anticipates that the entire system is to be tested during each 10 year period, we conclude the trial court abused its discretion by not making an effort to impose reasonable discovery limits as to requests 24, as it did with requests 4 and 17.

Accordingly, the writ of mandamus is conditionally granted in part and denied in part. Although we have jurisdiction to direct the trial court to proceed to make an effort to impose reasonable discovery limits, we may not tell the court what limits it should enter. In re Martinez Ramirez, 994 S.W.2d 682, 684 (Tex.App.--San Antonio 1998, no pet.). The trial court is directed to consider and determine, in the exercise of its discretion, the need for reasonable discovery limits as to requests for production 24; otherwise, the writ is denied. The writ will issue only if the trial court fails to comply with these instructions.

11

Don H. Reavis
Justice

Quinn, J., concurring.

Publish.