Joe CHAMBERLAIN and Marilyn
Kay Chamberlain, Relators,

v.

The Honorable J. Blair CHERRY Jr.,
Judge, 72nd District Court, Lubbock
County, Texas, Respondent.

No. 07–91–0035–CV.

Court of Appeals of Texas,
Amarillo.

Oct. 28, 1991.

John Dwyre & Associates, John Steven Dwyre, San Antonio, for relators.

Bill Davis, Lubbock, for respondent.

Before DODSON, BOYD and POFF, JJ.

1. The term of the lease began August 1, 1982.

POFF, Justice.

In this original mandamus proceeding, Joe and Marilyn Kay Chamberlain, relators, ask this court to direct Judge J. Blair Cherry, Jr. of the 72nd District Court in Lubbock County to vacate a protective order disallowing the discovery sought in their interrogatories, requests for production and requests for admissions. We conditionally grant the writ of mandamus.

This proceeding arises out of a lawsuit brought by E.Z. "Ted" Hogan, a landlord, against relators, his former tenants, for rents and cost of repairs under a lease.[1] Relators answered by raising the affirmative defenses of estoppel, fraud and waiver. Additionally, relators asserted a counterclaim under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987).

Relators initiated discovery by serving Hogan with a single document that combined interrogatories, requests for production and requests for admissions. Hogan timely made five separate objections to the discovery and moved for a protective order. First, Hogan objected to the entire set of interrogatories as being not relevant to the pending action and not reasonably calculated to lead to the discovery of evidence admissible at trial. Second, Hogan claimed that relators violated the Texas Rules of Civil Procedure by requesting that he answer the first thirty questions contained in the interrogatories if the number of responses called for by the interrogatories exceeded thirty. Third, Hogan objected that the requests for production asked for "any and all" documents and that such "boilerplate requests" did not comport with Texas Rule of Civil Procedure 167, which requires specificity of requests. Fourth, Hogan objected that the request for production of Hogan's individual income tax returns for every year since 1976 was not relevant to the pending action, was not reasonably calculated to lead to evidence admissible at trial and was an invasion of privacy. Fifth, in his prayer requesting a protective order and sanctions, Hogan ob-

jected that all of the discovery was "unreasonably frivolous, oppressive, overbroad and harassing." Additionally, we consider as part of Hogan's fifth objection an earlier objection that the interrogatories were oppressive, calculated to cause Hogan and his attorney unnecessary expense, and propounded for purposes of harassment. After a hearing, the trial court made findings in agreement with Hogan's objections and entered a protective order disallowing relators' interrogatories, requests for production and requests for admissions. Relators claim that the trial court's order constituted an abuse of discretion.

■ On appeal, Hogan also contends relators have not complied with Texas Rule of Appellate Procedure 121(a)(2)(D), for they have failed to show any compelling circumstances necessitating the issuance of a writ of mandamus. We disagree. The Texas Supreme Court has held that mandamus is available to correct a clear abuse of discretion in a discovery matter. *Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984, orig. proceeding); *General Motors v. Lawrence,* 651 S.W.2d 732, 733 (Tex.1983, orig. proceeding). "Requiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is 'equally convenient, beneficial, and effective as mandamus.'" *Jampole v. Touchy,* 673 S.W.2d at 576 (quoting *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 439 (1959, orig. proceeding)). *See also Morris v. Texas Employers Ins. Ass'n,* 759 S.W.2d 14, 16 (Tex.App.—Corpus Christi 1988, writ denied) (since errors in denying discovery are usually not adequately presented on appeal, mandamus is available for adequate review of discovery matters). As in *Jampole,* the trial court's order in this case may prevent relators from effectively preparing for trial and cause their remedy by appeal to be of doubtful value. *See Garcia v. Peeples,* 734 S.W.2d 343, 345 (Tex.1987, orig. proceeding).

Hogan first objected that the interrogatories were not relevant to the pending action and not reasonably calculated to lead to the discovery of evidence admissible at trial. The trial court made no finding in response to this objection. Therefore, the trial court's order disallowing relators' discovery is not based on Hogan's first objection. We need not consider Hogan's first objection further.

■ In accordance with Hogan's second objection, the trial court found that relators "exceeded the number of interrogatories" allowed by Texas Rule of Civil Procedure 168(5). That rule provides that "[t]he number of questions including subsections in a set of interrogatories shall be limited so as not to require more than thirty answers." *Id.* In recognition of this rule, relators stated in their single discovery document that "[t]here is a chance that your total number of substantive interrogatory responses may exceed thirty (30) if that occurs please answer the first thirty." Relators appear to have included this language in an abundance of caution to guard against the possibility that their interrogatories would be disallowed if Hogan claimed that more than thirty responses were required.[2] Hogan, however, did not object that the interrogatories called for more than thirty answers. Rather, Hogan objected that relators asked him to "answer the first 30 interrogatories and the rules do not provide that [relators] can select which ones to answer and which ones not to answer." Hogan's objection neither explicitly nor implicitly alleges that more than thirty responses were required. Thus, Hogan did not properly preserve the objection that the proffered interrogatories called for more than thirty responses. Any objection to the number of answers required by relators' interrogatories was thereby waived. *See Hobson v. Moore,* 734 S.W.2d 340, 341 (Tex.1987, orig. proceeding). In light of the fact that Hogan waived the objection, we must determine whether the trial court clearly abused its discretion by finding that relators exceeded the number of allowable interrogatories and entering a protective order that relators' interrogatories be disallowed.

2. Relators propounded only twenty-six (26) interrogatories.

■ A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985, orig. proceeding); *Foreman v. Jarrett*, 796 S.W.2d 316, 317 (Tex.App.—Austin 1990, orig. proceeding). A relator must establish that the facts and law of the case permit the trial court to make only one decision. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917; *Keller Indus. v. Blanton*, 804 S.W.2d 182, 185 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding).

A party seeking to limit discovery has the burden of pleading and proving the basis for the desired limitation. *Independent Insulating Glass/Southwest v. Street*, 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd w.o.j.) (orig. proceeding). *See also Masinga v. Whittington*, 792 S.W.2d 940, 942 (Tex.1990, orig. proceeding) (Doggett, J., concurring). "[A] trial court *may not* enter a protective order limiting discovery sought within the scope of Rule 166b unless the party seeking such protection has both pleaded and proved the supporting contentions." *Masinga v. Whittington*, 792 S.W.2d at 943 (Doggett, J., concurring) (emphasis added). Since Hogan did not properly plead that relators' interrogatories called for more than thirty responses, the trial court had absolutely no discretion to enter a protective order disallowing relators' interrogatories on the basis that more than thirty responses were required. The trial court clearly abused its discretion by entering a protective order disallowing relators' interrogatories on the basis of its finding that relators "exceeded the number of [allowable] interrogatories."

■ Hogan's third objection regarded relators' propounded requests for production. Hogan objected that the requests for production asked for "any and all" documents and that "such boilerplate requests do not meet the requirements of Rule 167 of the Texas Rules of Civil Procedure." The trial court agreed, finding that relators did not comply with Rule 167 because their requests for production did not "set forth the items to be inspected and [did] not describe each item and category with reasonable particularity."

Rule 167 provides that a request for production "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." Tex.R.Civ.P. 167(1)(c). Unlike the rules governing interrogatories and depositions, Rule 167 permits a party to request production of particular classes or types of documents but does not permit fishing expeditions for documents not of a particular type or class. *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989, orig. proceeding). In the present case, relators *did* request production of particular types of documents. For example, relators' first request for production asked Hogan for "any and all lease agreements between yourself and [relators] regarding any portion of the subject property since 1974." As another example, relators' twelfth request sought production of "any and all leases or rental agreements, deposit agreements, and related documents concerning or pertaining to all or part of the property subject of this suit for the period since July 31, 1989." These requests comply with Rule 167's mandate that requests for production must "set forth the items to be inspected either by individual item or by category ... with reasonable particularity." Tex.R.Civ.P. 167(1)(c). The mere fact that the requests asked for "any and all" such documents did not poison the requests.

The present case is distinguishable from *General Motors v. Lawrence*, 651 S.W.2d 732 (Tex.1983, orig. proceeding), a case upon which Hogan heavily relies. In *Lawrence*, the plaintiff in a products liability lawsuit requested General Motors to produce information regarding "causes of fuel spills resulting from damage to filler necks protruding from *any vehicles* designed, manufactured or sold" by the corporation. *Id.* at 733 (emphasis added). The vehicle involved in the lawsuit was a 1966 Chevrolet chassis cab truck. *Id.* General Motors argued that such a request would require production of information on all the automobiles it had manufactured since 1908, as

well as information on locomotives and tanks. *Id.* In light of the fact that the plaintiff was only interested in "trucks in which the gasoline tank was located within the passenger cab and in which the gasoline filler pipe protruded from the side of the truck," *id.*, the Supreme Court limited discovery to records of trucks built between 1949 and 1972. *Id.* at 734. *Lawrence* did not hold that a request is overbroad whenever the words "any" or "all" are used in a discovery request.

■ The present case is also distinguishable from *Loftin v. Martin,* 776 S.W.2d 145 (Tex.1989, orig. proceeding), in which the Supreme Court found that a request for production demanding "all notes, records, memoranda, documents and communications made that the carrier contends support its allegations" was vague, ambiguous and overbroad. *Id.* at 148. The request at issue in *Loftin* did not identify any particular type of documents, but merely requested a general examination of all the evidence the carrier had. Such is not the case here. None of relators' fourteen requests for production can be construed to be as broad as the request in *Loftin.* In the hearing before the trial court on Hogan's motion for protective order, Hogan did not point to a single specific request for production that was not sufficiently particular. Nor does he do so on appeal. Hogan failed to plead or prove that any specific request was vague, ambiguous or overbroad. Since the trial court may not issue a protective order unless the party seeking protection has pleaded and proved his contentions, *see Masinga v. Whittington,* 792 S.W.2d 940, 942 (Tex.1990, orig. proceeding) (Doggett, J., concurring), the trial court clearly abused its discretion by disallowing relators' requests for production on the basis that the requests did not comply with Rule 167.

In his fourth objection, Hogan specifically complained of relators' request for production of his individual income tax returns for every year since 1976. Hogan objected that the returns were not relevant to the subject matter of the pending lawsuit and were not calculated to lead to the discovery of evidence admissible at trial. He also objected that forced production of his income tax returns would be an invasion of his privacy. The trial court made a finding in accordance with Hogan's objection.

■ In Texas, income tax returns are subject to discovery to the extent they are relevant and material to the issues in the case. *Maresca v. Marks,* 362 S.W.2d 299, 300 (Tex.1962, orig. proceeding); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959, orig. proceeding); *Wielgosz v. Millard,* 679 S.W.2d 163, 167 (Tex.App.— Houston [14th Dist.] 1984, orig. proceeding); *Lloyds v. Hale,* 405 S.W.2d 639, 640 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.). The trial court has the duty to determine what portions of the requested tax returns, if any, are relevant and material to the cause of action. *Maresca v. Marks,* 362 S.W.2d at 300–01; *Wielgosz v. Millard,* 679 S.W.2d at 167. Therefore, we must examine the relevancy and materiality of Hogan's tax returns in this case and determine whether the trial court clearly abused its discretion by disallowing the production of Hogan's tax returns.

Relators claim that because they are seeking punitive damages via their DTPA counterclaim, they are entitled to the production of Hogan's income tax returns pursuant to *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988, orig. proceeding). Our analysis convinces us the *Lunsford* court did not hold that a party seeking punitive damages is entitled to production of the opposite party's income tax returns.

In *Lunsford,* our Supreme Court held that parties may discover evidence of a defendant's net worth in cases in which punitive or exemplary damages may be awarded. *Id.* at 473.[3] The *Lunsford* court did not hold, however, that income tax returns are evidence of net worth. In dis-

---

3. All that is required to allow discovery of net worth is an allegation of entitlement to punitive damages. *Lunsford v. Morris,* 746 S.W.2d at 473 (litigant need not cross any evidentiary thresh-

old before discovering net worth). In this case, relators made an allegation of entitlement to punitive damages by alleging a violation of the DTPA.

sent, Justice Gonzalez expressed concern that the majority opinion left the term "net worth" undefined:

How do we measure net worth? Do we prove "net worth" by profit and loss statements, *income tax returns*, cash liquidity, a Fortune 500 listing, Standard & Poor's rating and the like? "I know it when I see it" is not much of a standard. Without objective criteria, a case by case determination will undoubtedly yield a wide disparity of results.

*Id.* at 475 (Gonzalez, J., dissenting) (emphasis added). At present, "net worth" remains undefined. Justice Gonzalez' question as to whether income tax returns serve as a measure of a person's net worth remains open. No Texas court has ever explicitly held that income tax returns show net worth. While the Court of Appeals for the First District has twice allowed the discovery of income tax returns to show net worth, *Delgado v. Kitzman*, 793 S.W.2d 332, 333 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *Miller v. O'Neill*, 775 S.W.2d 56, 59 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding), in neither case did the court squarely confront the issue of whether income tax returns constitute net worth evidence. In *Miller*, the court merely reiterated the *Lunsford* holding, stating that "documents showing the net worth of [defendants] are relevant and discoverable." *Miller v. O'Neill*, 775 S.W.2d at 58. The court then went on to assume that the tax returns in question showed the defendants' net worth. The Houston court made a similar assumption in *Delgado*.

We are not prepared to make the same assumption. Rather, we find ourselves in complete agreement with the following statement:

A tax return does not within itself show the general wealth and financial condition of the person filing the return. A tax return shows income for the year in which the return is filed. The return does not disclose, as a financial statement does, the net worth of the party filing the return.

*Borenstein v. Blumenfeld*, 151 Ga.App. 420, 260 S.E.2d 377, 379 (Birdsong, J., concurring specially).

We heartily concur with the majority opinion in *Borenstein* which held that "[t]he interests of justice do not require production of tax returns ... where other discovery methods are available to obtain the same information." *Id.* 260 S.E.2d at 378. Our agreement with the *Borenstein* holding is founded on the premise that when financial statements accurately revealing a defendant's net worth are available, income tax returns are simply not relevant.

■ Because of the important privacy interest that persons have in their income tax returns, we hold that a plaintiff seeking to discover a defendant's tax returns must make a showing that the returns are relevant to a determination of the defendant's financial position. *See Borenstein v. Blumenfeld*, 260 S.E.2d at 378. Relevancy is not to be assumed. Our Supreme Court has said:

The assumption is implicit in the opinions of this court that a trial judge will discriminate in ordering discovery between information disclosed by income tax returns which is relevant and material to the matters in controversy and information which is not. The protection of privacy is of fundamental—indeed, of constitutional—importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. But sacrifice of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality *to the matters in controversy.*

*Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex.1962, orig. proceeding). Bearing in mind the *Maresca* caveat concerning a party's constitutional right of privacy in his or her income tax returns, we will test the materiality and relevancy of Hogan's last

fifteen tax returns to his present net worth.

■ In this case, relators made no showing that Hogan's tax returns were relevant to a determination of his financial position. They made no claim that Hogan could not produce financial statements accurately revealing his net worth. Indeed, relators did not even request production of such statements. Therefore, in view of the *Maresca* caveat and under this record, the trial court's finding that Hogan's income tax returns were not relevant to the subject matter of the pending litigation was entirely proper. Thus, the trial court did not abuse its discretion by disallowing relators' request for production of Hogan's income tax returns.

■ In his fifth and final objection to relators' discovery, Hogan complained in his prayer for a protective order that relators' interrogatories, requests for production and requests for admissions were unreasonably frivolous, oppressive, overbroad and harassing. The trial court, in issuing two separate findings, apparently considered both this objection and a prior objection [4] that relators' interrogatories were oppressive, calculated to cause Hogan and his attorney unnecessary labor and expense, and propounded primarily for harassment purposes. The trial court first found that the discovery as a whole was calculated to cause Hogan and his attorney unnecessary expense and labor, was done primarily for harassment and "exceeded the limits provided by the [Texas] Rules of Civil Procedure." Additionally, the trial court found that disallowance of relators' discovery was necessary to protect Hogan "from undue burden, unnecessary expense, harassment or annoyance or the invasion of personal right, [sic] constitutional, or property rights." We must determine whether the trial court clearly abused its discretion by disallowing relators' discovery on the basis of these findings.

In an opinion by Justice Keltner, the Fort Worth Court of Appeals held that "[a]ny party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly or harassing to produce, has the affirmative duty to plead and prove the work necessary to comply with discovery." *Independent Insulating Glass/Southwest v. Street*, 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd w.o.j.) (orig. proceeding). The Dallas Court of Appeals followed the *Street* decision in *National Union Fire Ins. Co. v. Hoffman*, 746 S.W.2d 305, 311 (Tex.App.—Dallas 1988, orig. proceeding). In accord with both *Street* and *Hoffman*, the Texas Supreme Court recently held that a trial court abused its discretion by permitting a deposition to be taken only by stenographic recording and not by videotape recording. *Masinga v. Whittington*, 792 S.W.2d 940 (Tex.1990, orig. proceeding). In *Masinga*, the opponent of discovery objected to an attempt to videotape his oral deposition on the grounds that the video camera and its accompanying technician and bright lights would be unnecessarily distracting and stressful to him. *Id.* However, at the hearing on his motion for a protective order, the opponent did not present any evidence that the videotaping would cause him unnecessary distraction or stress. *Id.* The Supreme Court found the trial court had abused its discretion because "[a] party seeking to avoid the videotaping of a deposition must show particular, specific and demonstrable injury...." *Id.* Justice Doggett stated the proposition more broadly: "a party seeking protection from discovery for ... reasons[] such as undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional or property rights, should ... be required to produce evidence in support of the objection." *Id.* at 942 (Doggett, J., concurring). Such evidence must show a particular, articulated and demonstrable injury; conclusory allegations are insufficient. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987, orig. proceeding).

The record reflects that Hogan never produced any evidence to support his objection that relators' discovery was unduly burdensome, unreasonably frivolous, un-

---

4. We consider both objections as Hogan's fifth objection.

necessarily expensive, oppressive, overbroad, harassing or annoying. Nor did Hogan produce evidence showing that his personal, constitutional or property rights had been invaded. When asked by the trial court at the hearing on motion for protective order whether he was going to produce any evidence, Hogan's attorney responded "no." Instead, Hogan's attorney relied on his argument that six weeks would be required to answer relators' discovery; that there was "a box full of stuff" he had worked on; and that "hours and hours and weeks" had already been spent in an effort to answer the discovery. Pleadings, motions and arguments of counsel do not constitute evidence. *Delgado v. Kitzman,* 793 S.W.2d 332, 333 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

Hogan produced no evidence in support of his objection but rather, he relied entirely on conclusory allegations which, as the Supreme Court has indicated, are wholly insufficient. *Garcia v. Peeples,* 734 S.W.2d at 345. Thus, the trial court had only one choice; to overrule Hogan's fifth objection. The trial court's protective order disallowing relators' discovery on the basis of Hogan's fifth objection was a clear abuse of discretion.

 As a final matter, Hogan contends that relators have failed to comply with Texas Rule of Appellate Procedure 121(a)(2)(F). That rule requires the relator in an original proceeding for a writ of mandamus to file a petition with the court of appeals that includes an affidavit verifying the truth of all factual allegations. Hogan concedes that relators included such an affidavit with their petition in this case but he contends that the affidavit is defective due to the affiant's alleged absence from the hearing on motion for protective order. Specifically, Hogan challenges the affiant's knowledge of what evidence was offered at the hearing.

Even if the affiant was not present at the hearing and had no personal knowledge of the evidence offered at the hearing, this alleged defect will not invalidate the affidavit or the petition. A transcript of the hearing on Hogan's motion for protective order was made part of the petition as an exhibit, and thus we need not rely on the declaration of the affiant as to evidence offered. We can examine the transcript and determine for ourselves the sufficiency of the evidence.

In summary, we hold that, except for its decision to disallow production of Hogan's income tax returns, the trial court abused its discretion by disallowing relators' interrogatories, requests for production and requests for admissions. We are confident that Judge Cherry will modify his order of December 28, 1990, in accordance with this opinion. A writ of mandamus will issue only if he fails to do so.