**In re CFWC RELIGIOUS MINISTRIES, INC.**

No. 09–04–258–CV.

Court of Appeals of Texas, Beaumont.

Submitted June 22, 2004.

Decided Aug. 26, 2004.

J. Thad Heartfield, Heartfield & McGinnis, LLP, Robert Keith Wade, Beaumont, for appellant.

Wyatt D. Snider, Walter D. Snider, Beaumont, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

Relator, CFWC Religious Ministries, Inc., has filed a petition for writ of mandamus requesting that we order respondent, the Honorable Milton Gunn Shuffield, presiding judge of the 136th District Court in Jefferson County, Texas, to rescind his "Order On Defendant's Motion To Compel," dated May 17, 2004, which required Relator to provide full and complete responses to the request for production of defendant/real party in interest, John J. Keating as follows:

A. All records of Church memberships from inception to present.

B. All Church records pertaining to members of the Church who have joined and/or who have left the Church from inception to present.

C. All Church financial records from January 1995 to present.

D. All records and documentation pertaining to CFWC Religious Ministries Inc.'s 501(c)(3) status.

E. All Church records pertaining to Membership meetings from inception to present.

F. All Church records of tithing statements from inception to present.

Relator argues it has a clear First Amendment right to protection against disclosure of any membership and tithing records in its possession, as the United States Supreme Court has held that compelled disclosure of the identities of members or contributors of an organization may have a chilling effect on those members or contributors as well as on the organization's own activity. *See NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *see also Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Relator also requests that we order respondent to compel defendant Keating to produce property sale and financial information.

The defendant replies that because Relator is the plaintiff in the underlying lawsuit, the "offensive use" doctrine applies resulting in a waiver of Relator's constitutional rights. Citing to such cases as *Republic Insurance Company v. Davis*, 856 S.W.2d 158 (Tex.1993), and *Texas Department of Public Safety Officers Association v. Denton*, 897 S.W.2d 757 (Tex.1995), defendant argues that a plaintiff who uses a constitutional privilege to protect relevant information from a defendant uses the constitutional privilege as a sword, and that Texas law does not permit a party to raise a claim or defense in a lawsuit and then attempt to stave off discovery related to that allegation by claiming a privilege.

Mandamus is an extraordinary remedy that may be utilized only when there is no adequate appellate remedy. *Walker v. Packer*, 827 S.W.2d 833, 841 (Tex.1992). With regard to issues of discovery, and particularly a claim of privilege, the Texas Supreme Court has stated:

[A] party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege.... As we noted in *Crane [v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959)]: "After the [privileged documents] had been inspected, examined and reproduced ... a holding that the

court had erroneously issued the order would be of small comfort to relators in protecting their papers."

*Id.* at 843 (some citations omitted).

■ To show a waiver of privilege under the offensive-use doctrine, the party seeking discovery must establish: (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted; and (3) disclosure of the privileged information must be the only means by which the aggrieved party may obtain the evidence. *Republic Ins. Co.*, 856 S.W.2d at 163. If any one of these requirements is lacking, the trial court must uphold the privilege. *Id.*

The material presented by the real party in interest includes a letter dated February 12, 2004, from counsel for defendant addressed to the respondent, Judge Shuffield. The letter was meant to serve as defense counsel's written response to the Relator's supplementation of its disclosure responses. The trial court had requested that Relator supplement its original responses so as to inform defendant of Relator's method for calculating damages in the lawsuit. This was apparently in connection with a request from defendant to Relator to disclose the amount and any method of calculating economic damages under Relator's various causes of action. *See* Tex.R. Civ. P. 194.2(d). Apparently quite disappointed by the contents of Relator's supplemental disclosure responses, defense counsel's letter continues, in pertinent part, as follows:

The plaintiff supplemented his response to request for disclosure with regards to the computation of damages.... He did not state the amount of economic damages as required by Rule 194.2. Unfortunately, I believe this still leaves us in the same position as we were before the hearing on my client's Motion to Compel.

[Relator's Counsel] has added to those disclosures by designating Sam O. Smith of SmithCorp Real Estate Services, L.C. as an expert who will testify as to the "real estate values" and "title issues related to this litigation."

It still remains unclear from the Plaintiff's disclosures as to how they will calculate the "highest and best use of the property".... It is simply unwise for me at this time to agree to this as disclosing the method for calculating the economic damages in this case. It is still unclear to me what the now designated expert will use to determine the "highest and best use of the property." Until I receive a report from this expert as to how he calculated his economic damages, I cannot be sure that he will not include as one of his methods for calculating damages the loss of membership to the church, frustration of the church's religious worship, loss of revenues to the church, and other general subjective harm to the church....

....

If [Relator's Counsel]'s expert is going to include lost profits in his method for the calculation of economic damages, then I am still entitled to my discovery requests. Until I receive a report from the Plaintiff's expert, and with the vagueness of their newly amended disclosure responses, I still do not know how the Plaintiff will calculate it's damages. Therefore, I stand behind my Motion to Compel.

... I would still need to insist on requesting discovery which includes the number of members of the church from inception to the present on an annual basis as this will be relevant to any method of calculation of damages.

I strongly believe that the law allows me to protect my client from evidence being put on trial that I was not able to investigate through discovery. I don't think the law will allow [Relator's Counsel] to hold back any discovery with regards to his church membership and revenues, and then at trial call witnesses to the stand who will testify as to how their church was harmed by the loss of this parking space, through some subjective reasoning, loss of members, or loss of revenues....

■ The trial judge granted the motion to compel, as he explained at the hearing, because of his ruling on the nature and scope of Relator's damages. The trial court had ruled Relator could not base its claim on a "highest and best use" analysis of damages, but instead must base its claim on "the loss of use by [Relator] as measured by [Relator's] actual damages." The order compelling production appears to be based on the assumption that Relator cannot show its actual loss of use damages without relying on the information ordered to be produced. Relator cannot base a damage claim on information it refuses to produce in discovery.

To be clear, if Relator intends to prove actual damages by showing a reduction in membership, attendance, or revenue, then the offensive-use doctrine would apply. However, the assumption that actual loss-of-use damages cannot be proven by means other than by showing a reduction in attendance or tithing is not necessarily true. If Relator has leased parking space from another source at a higher rate, or is pursuing actual loss of use damages unrelated to a loss of attendance or tithing, Relator's tithing and membership information may not be necessary to support the damage claim.

We find that the defendant, John J. Keating, as the party seeking the discovery, has not clearly established that disclosure of the privileged information is the only means by which he may discover Relator's claimed damages. From the portions of defense counsel's letter to respondent, it is apparent that the defendant sought discovery of the privileged information because defendant was unclear as to the "method of calculation" intended to be used by Relator at trial to prove economic damages. In the supplemented responses filed by Relator, and referred to in defense counsel's letter, Relator designated Sam O. Smith of Smithcorp Real Estate Services, LC, located in Beaumont, Texas, as Relator's expert who would testify "as to real estate values and title issues related to the litigation." Relator further indicated that Mr. Smith had not prepared any documents with regard to his opinion. Tex.R. Civ. P. 195.4 states:

In addition to disclosure under Rule 194, a party may obtain discovery concerning the subject matter on which the expert is expected to testify, the expert's mental impressions and opinions, the facts known to the expert (regardless of when the factual information was acquired) that relate to or form the basis of the testifying expert's mental impressions and opinions, and other discoverable matters, including documents not produced in disclosure, only by oral deposition of the expert and by a report prepared by the expert under this rule.

Furthermore, Tex.R. Civ. P. 195.5 provides:

If the discoverable factual observations, tests, supporting data, calculations, photographs, or opinions of an expert have not been recorded and reduced to tangible form, the court may order these matters reduced to tangible form and produced in addition to the deposition.

■ We can discern nothing in the material before us, and neither does defendant indicate, why Relator cannot be ordered to disclose how it intends to prove loss-of-use damages, or why Relator's expert cannot be deposed, or Relator ordered to produce an expert report indicating whether he intends to testify to Relator's economic damages, and if so, any and all bases for calculating economic damages. Indeed, with regard to the substance and basis of an expert's opinion, Tex.R. Civ. P. 194.2(f)(3) & (4)(A) appears to require, at the very least, that any documents or data compilations which form the basis or bases of a testifying expert's opinion be provided to an opposing party who makes a timely request for said information. A party who fails to disclose supporting data relating to the testifying expert's opinion risks having that expert stricken by the trial court. *See* Tex.R. Civ. P. 193.6; *Villegas v. Texas Dep't of Transp. and Rekca, Inc.,* 120 S.W.3d 26, 35 (Tex.App.-San Antonio 2003, pet. denied). While the Court in *Republic Insurance Company* recognized that instances in which a claim of privilege is used as a sword rather than a shield may waive the privilege, the Court also recognized that privileges "represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found." *Id.,* 856 S.W.2d at 163. The record before us indicates that the apparent basis for the respondent's order on the motion to compel was the defendant's frustration in apparently being unable to have Relator make clear the basis for any economic damages alleged. However, it also appears that defendant has not exhausted all other discovery methods by which to secure this information, as is required under the third prong of the *Republic Insurance Company* test, before waiver of a privilege is to be found.

■ Although not squarely before us here, we do note that, generally, legislative enactments or judicial decrees face serious difficulty in passing constitutional muster when said acts or decrees contain language that sanctions unwarranted invasions by government of the rights of association and privacy of private individuals guaranteed by the First and Fourteenth Amendments. *See generally Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *NAACP v. Alabama,* 357 U.S. at 460–67, 78 S.Ct. 1163. In *Osterberg v. Peca,* 12 S.W.3d 31, 47 (Tex.2000), a case examining legislation limiting campaign contributions to candidates for state office, the Texas Supreme Court made the following observations regarding judicial decisions on "freedom of association" issues:

In a second line of decisions, "the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment," because "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." [*Roberts v. United States Jaycees,* 468 U.S. 609,] at 618, 622, 104 S.Ct. 3244 [, 82 L.Ed.2d 462 (1984)]. This right of association is a "basic constitutional freedom" that, "like free speech, lies at the foundation of a free society." *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (quoting *Kusper v. Pontikes,* 414 U.S. 51, 57, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), and *Shelton v. Tucker,* 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)). Infringement upon this type of freedom to associate — the type that is instrumental to protecting First Amendment freedoms — is subject to

the closest scrutiny. The State must demonstrate a compelling or overriding interest "and employ[ ] means closely drawn to avoid unnecessary abridgement." *Buckley*, 424 U.S. at 25, 96 S.Ct. 612, 46 L.Ed.2d 659; *see also Roberts*, 468 U.S. at 623, 104 S.Ct. 3244, 82 L.Ed.2d 462.

*Osterberg*, 12 S.W.3d at 47.

As neither the issue nor the particular facts and circumstances are before us, however, we will speculate no further. Because the defendant failed to satisfy the third prong of the test established in *Republic Insurance Company* for waiver of a claim of privilege by offensive use, the privilege must be upheld at this time. The first portion of Relator's petition for writ of mandamus is sustained.

Relator also seeks mandamus relief from respondent's protective order from discovery which permitted defendant to withhold any financial information regarding Keating's "sale or operation of the JK Chevrolet dealership and property" and Keating's net assets and gross revenues. Admirably, defendant concedes that because Relator's pleadings included a request for exemplary damages, Relator is entitled to be provided with evidence of defendant's net worth. *See Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988) (In a suit in which exemplary damages may be recovered the defendant's net worth is relevant and therefore discoverable.). *See also* Tex.R. Civ. P. 192.3(a). The parties differ, however, in what form the evidence of net worth should take. Defendant contends that Relator does not need the production of sales, financial reports, and other financial information to obtain the necessary net worth evidence. Defendant points us to *Chamberlain v. Cherry*, 818 S.W.2d 201, 205–07 (Tex.App.-Amarillo 1991, no writ)

as having "clarified" *Lunsford* by finding the *Lunsford* Court did not hold a party seeking exemplary damages is entitled to income tax returns. We find nothing so definitive on the issue in *Chamberlain* as defendant would have us believe.

The Court in *Chamberlain* examined cases, including *Lunsford*, in an attempt to discover whether income tax returns constitute net worth evidence. *Chamberlain*, 818 S.W.2d at 205–06. The *Chamberlain* Court concluded with the following holding: "Because of the important privacy interest that persons have in their income tax returns, we hold that a plaintiff seeking to discover a defendant's tax returns must make a showing that the returns are relevant to a determination of the defendant's financial position." *Id.* at 206. This position is entirely consistent with the following observations contained in *Lunsford* :

... Absent a privilege or specifically enumerated exemption, our rules permit discovery of any "relevant" matter; thus, there is no evidentiary threshold a litigant must cross before seeking discovery. Tex.R.Civ.P. 166b(2)(a).[1] Neither do the rules of evidence contemplate exclusion of otherwise relevant proof unless the evidence proffered is unfairly prejudicial, privileged, incompetent, or otherwise *legally* inadmissible. Tex.R.Civ.Evid. 401, 403, 501–10, 601. *Accord, Coy v. Superior Court*, 58 Cal.2d 210, 373 P.2d 457, 23 Cal.Rptr. 393 (1962). We do not circumscribe, however, a trial judge's authority to consider on motion whether a party's discovery request involves unnecessary harassment or invasion of personal or property rights....

*Lunsford*, 746 S.W.2d at 473.

We echo the sentiments of the *Lunsford* Court in that we refrain from commenting

---

1. *See now* Tex.R. Civ. P. 192.3(a).

on what manner the defendant's net worth evidence must be provided to Relator. The respondent has both the rules of discovery and the rules of evidence at his disposal. The second portion of Relator's petition for writ of mandamus is sustained to the limited extent that it prohibits evidence of defendant's net worth from being discovered by Relator.

For the reasons set out above, we conditionally grant Relator's petition for writ of mandamus and direct the respondent to vacate its orders of May 17, 2004, compelling Relator to fully respond to defendant's request for production as listed under parts A through F of said order, and protecting defendant from discovery of net worth evidence by Relator. We are confident that the respondent will promptly comply with our opinion. The writ will issue only if the respondent does not do so.

WRIT CONDITIONALLY GRANTED.