In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-258 CV


____________________



IN RE CFWC RELIGIOUS MINISTRIES, INC.






Original Proceeding






MEMORANDUM TO CLERK


 You are directed to make the following correction in the Opinion dated August 26,
2004:

 On page 11, the seventh line from the top, change the cite In re Chamberlain to
Chamberlain v. Cherry.

 You will give notice of this correction in the original Opinion by sending a copy of
the corrected page accompanied by this memorandum to all interested parties who received
a copy of the original Opinion.

 Entered this the 18th day of November, 2004. 


 PER CURIAM

In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-258 CV


____________________



IN RE CFWC RELIGIOUS MINISTRIES, INC.







Original Proceeding






OPINION


 Relator, CFWC Religious Ministries, Inc., has filed a petition for writ of mandamus
requesting that we order respondent, the Honorable Milton Gunn Shuffield, presiding
judge of the 136th District Court in Jefferson County, Texas, to rescind his "Order On
Defendant's Motion To Compel," dated May 17, 2004, which required Relator to provide
full and complete responses to the request for production of defendant/real party in
interest, John J. Keating as follows:





 All records of Church memberships from inception to present.

 All Church records pertaining to members of the Church who have
joined and/or who have left the Church from inception to present.

 All Church financial records from January 1995 to present.

 All records and documentation pertaining to CFWC Religious
Ministries Inc.'s 501(c)(3) status.

 All Church records pertaining to Membership meetings from
inception to present.

 All Church records of tithing statements from inception to present.



 Relator argues it has a clear First Amendment right to protection against disclosure
of any membership and tithing records in its possession, as the United States Supreme
Court has held that compelled disclosure of the identities of members or contributors of
an organization may have a chilling effect on those members or contributors as well as on
the organization's own activity. See NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163,
2 L.Ed.2d 1488 (1958); see also Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d
659 (1976). Relator also requests that we order respondent to compel defendant Keating
to produce property sale and financial information. 

 The defendant replies that because Relator is the plaintiff in the underlying lawsuit,
the "offensive use" doctrine applies resulting in a waiver of Relator's constitutional rights. 
Citing to such cases as Republic Insurance Company v. Davis, 856 S.W.2d 158 (Tex. 

1993), and Texas Department of Public Safety Officers Association v. Denton, 897 S.W.2d
757 (Tex. 1995), defendant argues that a plaintiff who uses a constitutional privilege to
protect relevant information from a defendant uses the constitutional privilege as a sword,
and that Texas law does not permit a party to raise a claim or defense in a lawsuit and then
attempt to stave off discovery related to that allegation by claiming a privilege. 

 Mandamus is an extraordinary remedy that may be utilized only when there is no
adequate appellate remedy. Walker v. Packer, 827 S.W.2d 833, 841 (Tex. 1992). With
regard to issues of discovery, and particularly a claim of privilege, the Texas Supreme
Court has stated:

 [A] party will not have an adequate remedy by appeal when the appellate
court would not be able to cure the trial court's discovery error. This occurs
when the trial court erroneously orders the disclosure of privileged
information which will materially affect the rights of the aggrieved party,
such as documents covered by the attorney-client privilege . . . . As we
noted in Crane [v. Tunks, 160 Tex. 182, 328 S.W.2d 434, 439 (1959)]:
"After the [privileged documents] had been inspected, examined and
reproduced . . . a holding that the court had erroneously issued the order
would be of small comfort to relators in protecting their papers." 


Id. at 843 (some citations omitted). 

 To show a waiver of privilege under the offensive-use doctrine, the party seeking
discovery must establish: (1) the party asserting the privilege is seeking affirmative relief;
(2) the privileged information sought must be such that, if believed by the fact finder, in 

all probability it would be outcome determinative of the cause of action asserted; and (3)
disclosure of the privileged information must be the only means by which the aggrieved
party may obtain the evidence. Republic Ins. Co., 856 S.W.2d at 163. If any one of these
requirements is lacking, the trial court must uphold the privilege. Id. 

 The material presented by the real party in interest includes a letter dated February
12, 2004, from counsel for defendant addressed to the respondent, Judge Shuffield. The
letter was meant to serve as defense counsel's written response to the Relator's
supplementation of its disclosure responses. The trial court had requested that Relator
supplement its original responses so as to inform defendant of Relator's method for
calculating damages in the lawsuit. This was apparently in connection with a request from
defendant to Relator to disclose the amount and any method of calculating economic
damages under Relator's various causes of action. See Tex. R. Civ. P. 194.2(d). 
Apparently quite disappointed by the contents of Relator's supplemental disclosure
responses, defense counsel's letter continues, in pertinent part, as follows: 

 The plaintiff supplemented his response to request for disclosure with
regards to the computation of damages . . . . He did not state the amount of
economic damages as required by Rule 194.2. Unfortunately, I believe this
still leaves us in the same position as we were before the hearing on my
client's Motion to Compel. 



 [Relator's Counsel] has added to those disclosures by designating Sam
O. Smith of SmithCorp Real Estate Services, L.C. as an expert who will
testify as to the "real estate values" and "title issues related to this
litigation." 


 It still remains unclear from the Plaintiff's disclosures as to how they
will calculate the "highest and best use of the property". . . . It is simply
unwise for me at this time to agree to this as disclosing the method for
calculating the economic damages in this case. It is still unclear to me what
the now designated expert will use to determine the "highest and best use of
the property." Until I receive a report from this expert as to how he
calculated his economic damages, I cannot be sure that he will not include
as one of his methods for calculating damages the loss of membership to the
church, frustration of the church's religious worship, loss of revenues to the
church, and other general subjective harm to the church. . . . 


 . . . .


 If [Relator's Counsel]'s expert is going to include lost profits in his
method for the calculation of economic damages, then I am still entitled to
my discovery requests. Until I receive a report from the Plaintiff's expert,
and with the vagueness of their newly amended disclosure responses, I still
do not know how the Plaintiff will calculate it's damages. Therefore, I stand
behind my Motion to Compel.


 . . . I would still need to insist on requesting discovery which
includes the number of members of the church from inception to the present
on an annual basis as this will be relevant to any method of calculation of
damages. 


 I strongly believe that the law allows me to protect my client from
evidence being put on trial that I was not able to investigate through
discovery. I don't think the law will allow [Relator's Counsel] to hold back
any discovery with regards to his church membership and revenues, and then
at trial call witnesses to the stand who will testify as to how their church was
harmed by the loss of this parking space, through some subjective reasoning,
loss of members, or loss of revenues. . . .


 The trial judge granted the motion to compel, as he explained at the hearing,
because of his ruling on the nature and scope of Relator's damages. The trial court had
ruled Relator could not base its claim on a "highest and best use" analysis of damages, but
instead must base its claim on "the loss of use by [Relator] as measured by [Relator's]
actual damages." The order compelling production appears to be based on the assumption
that Relator cannot show its actual loss of use damages without relying on the information
ordered to be produced. Relator cannot base a damage claim on information it refuses to
produce in discovery.

 To be clear, if Relator intends to prove actual damages by showing a reduction in
membership, attendance, or revenue, then the offensive-use doctrine would apply.
However, the assumption that actual loss-of-use damages cannot be proven by means other
than by showing a reduction in attendance or tithing is not necessarily true. If Relator has
leased parking space from another source at a higher rate, or is pursuing actual loss of use
damages unrelated to a loss of attendance or tithing, Relator's tithing and membership
information may not be necessary to support the damage claim. 


 We find that the defendant, John J. Keating, as the party seeking the discovery, has
not clearly established that disclosure of the privileged information is the only means by
which he may discover Relator's claimed damages. From the portions of defense counsel's
letter to respondent, it is apparent that the defendant sought discovery of the privileged
information because defendant was unclear as to the "method of calculation" intended to
be used by Relator at trial to prove economic damages. In the supplemented responses
filed by Relator, and referred to in defense counsel's letter, Relator designated Sam O.
Smith of Smithcorp Real Estate Services, LC, located in Beaumont, Texas, as Relator's
expert who would testify "as to real estate values and title issues related to the litigation." 
Relator further indicated that Mr. Smith had not prepared any documents with regard to
his opinion. Tex. R. Civ. P. 195.4 states:

 In addition to disclosure under Rule 194, a party may obtain discovery
concerning the subject matter on which the expert is expected to testify, the
expert's mental impressions and opinions, the facts known to the expert
(regardless of when the factual information was acquired) that relate to or
form the basis of the testifying expert's mental impressions and opinions, and
other discoverable matters, including documents not produced in disclosure,
only by oral deposition of the expert and by a report prepared by the expert
under this rule. 







Furthermore, Tex. R. Civ. P. 195.5 provides:


 If the discoverable factual observations, tests, supporting data,
calculations, photographs, or opinions of an expert have not been recorded
and reduced to tangible form, the court may order these matters reduced to
tangible form and produced in addition to the deposition.


 We can discern nothing in the material before us, and neither does defendant
indicate, why Relator cannot be ordered to disclose how it intends to prove loss-of-use
damages, or why Relator's expert cannot be deposed, or Relator ordered to produce an
expert report indicating whether he intends to testify to Relator's economic damages, and
if so, any and all bases for calculating economic damages. Indeed, with regard to the
substance and basis of an expert's opinion, Tex. R. Civ. P. 194.2(f)(3) & (4)(A) appears
to require, at the very least, that any documents or data compilations which form the basis
or bases of a testifying expert's opinion be provided to an opposing party who makes a
timely request for said information. A party who fails to disclose supporting data relating
to the testifying expert's opinion risks having that expert stricken by the trial court. See
Tex. R. Civ. P. 193.6; Villegas v. Texas Dep't of Transp. and Rekca, Inc., 120 S.W.3d
26, 35 (Tex. App.--San Antonio 2003, pet. denied). While the Court in Republic
Insurance Company recognized that instances in which a claim of privilege is used as a
sword rather than a shield may waive the privilege, the Court also recognized that
privileges "represent society's desire to protect certain relationships, and an offensive use
waiver of a privilege should not lightly be found." Id., 856 S.W.2d at 163. The record
before us indicates that the apparent basis for the respondent's order on the motion to
compel was the defendant's frustration in apparently being unable to have Relator make
clear the basis for any economic damages alleged. However, it also appears that defendant
has not exhausted all other discovery methods by which to secure this information, as is
required under the third prong of the Republic Insurance Company test, before waiver of
a privilege is to be found. 

 Although not squarely before us here, we do note that, generally, legislative
enactments or judicial decrees face serious difficulty in passing constitutional muster when
said acts or decrees contain language that sanctions unwarranted invasions by government
of the rights of association and privacy of private individuals guaranteed by the First and
Fourteenth Amendments. See generally Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247,
5 L.Ed.2d 231 (1960); NAACP v. Alabama, 357 U.S. at 460-67. In Osterberg v. Peca,
12 S.W.3d 31, 47 (Tex. 2000), a case examining legislation limiting campaign
contributions to candidates for state office, the Texas Supreme Court made the following
observations regarding judicial decisions on "freedom of association" issues:

 In a second line of decisions, "the Court has recognized a right to
associate for the purpose of engaging in those activities protected by the First
Amendment," because "[a]n individual's freedom to speak, to worship, and
to petition the government for the redress of grievances could not be
vigorously protected from interference by the State unless a correlative
freedom to engage in group effort toward those ends were not also
guaranteed." [Roberts v. United States Jaycees, 468 U.S. 609,] at 618, 622,
104 S.Ct. 3244 [, 82 L.Ed.2d 462 (1984)]. This right of association is a
"basic constitutional freedom" that, "like free speech, lies at the foundation
of a free society." Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 46
L.Ed.2d 659 (1976) (quoting Kusper v. Pontikes, 414 U.S. 51, 57, 94 S.Ct.
303, 38 L.Ed.2d 260 (1973), and Shelton v. Tucker, 364 U.S. 479, 486, 81
S.Ct. 247, 5 L.Ed.2d 231 (1960)). Infringement upon this type of freedom
to associate - - the type that is instrumental to protecting First Amendment
freedoms - - is subject to the closest scrutiny. The State must demonstrate
a compelling or overriding interest "and employ[] means closely drawn to
avoid unnecessary abridgement." Buckley, 424 U.S. at 25, 96 S.Ct. 612;
see also Roberts, 468 U.S. at 623, 104 S.Ct. 3244.


Osterberg, 12 S.W.3d at 47.


 As neither the issue nor the particular facts and circumstances are before us,
however, we will speculate no further. Because the defendant failed to satisfy the third
prong of the test established in Republic Insurance Company for waiver of a claim of
privilege by offensive use, the privilege must be upheld at this time. The first portion of
Relator's petition for writ of mandamus is sustained.

 Relator also seeks mandamus relief from respondent's protective order from
discovery which permitted defendant to withhold any financial information regarding
Keating's "sale or operation of the JK Chevrolet dealership and property" and Keating's
net assets and gross revenues. Admirably, defendant concedes that because Relator's
pleadings included a request for exemplary damages, Relator is entitled to be provided with
evidence of defendant's net worth. See Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.
1988) (In a suit in which exemplary damages may be recovered the defendant's net worth
is relevant and therefore discoverable.). See also Tex. R. Civ. P. 192.3(a). The parties
differ, however, in what form the evidence of net worth should take. Defendant contends
that Relator does not need the production of sales, financial reports, and other financial
information to obtain the necessary net worth evidence. Defendant points us to 
Chamberlain v. Cherry, 818 S.W.2d 201, 205-07 (Tex. App.--Amarillo 1991, no writ) as
having "clarified" Lunsford by finding the Lunsford Court did not hold a party seeking
exemplary damages is entitled to income tax returns. We find nothing so definitive on the
issue in Chamberlain as defendant would have us believe.

 The Court in Chamberlain examined cases, including Lunsford, in an attempt to
discover whether income tax returns constitute net worth evidence. Chamberlain, 818
S.W.2d at 205-06. The Chamberlain Court concluded with the following holding:
"Because of the important privacy interest that persons have in their income tax returns,
we hold that a plaintiff seeking to discover a defendant's tax returns must make a showing
that the returns are relevant to a determination of the defendant's financial position." Id.
at 206. This position is entirely consistent with the following observations contained in
Lunsford:

 . . . Absent a privilege or specifically enumerated exemption, our
rules permit discovery of any "relevant" matter; thus, there is no evidentiary
threshold a litigant must cross before seeking discovery. Tex.R.Civ.P.
166b(2)(a).[ (1)] Neither do the rules of evidence contemplate exclusion of
otherwise relevant proof unless the evidence proffered is unfairly prejudicial,
privileged, incompetent, or otherwise legally inadmissible. Tex.R.Civ.Evid.
401, 403, 501-10, 601. Accord, Coy v. Superior Court, 58 Cal.2d 210, 373
P.2d 457, 23 Cal.Rptr. 393 (1962). We do not circumscribe, however, a
trial judge's authority to consider on motion whether a party's discovery
request involves unnecessary harassment or invasion of personal or property
rights. . . .


Lunsford, 746 S.W.2d at 473.


 We echo the sentiments of the Lunsford Court in that we refrain from commenting
on what manner the defendant's net worth evidence must be provided to Relator. The
respondent has both the rules of discovery and the rules of evidence at his disposal. The
second portion of Relator's petition for writ of mandamus is sustained to the limited extent
that it prohibits evidence of defendant's net worth from being discovered by Relator. For the reasons set out above, we conditionally grant Relator's petition for writ of
mandamus and direct the respondent to vacate its orders of May 17, 2004, compelling
Relator to fully respond to defendant's request for production as listed under parts A
through F of said order, and protecting defendant from discovery of net worth evidence
by Relator. We are confident that the respondent will promptly comply with our opinion. 
The writ will issue only if the respondent does not do so. 

 WRIT CONDITIONALLY GRANTED. 



 PER CURIAM



Submitted on June 22, 2004

Opinion Delivered August 26, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. See now Tex. R. Civ. P. 192.3(a).